SUSAN BUDZILENI, Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

First District (6th Division)  No. 1—08—2188

Opinion filed June 5, 2009.

Richard J. Gonzalez, of Chicago-Kent College of Law, of Chicago, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Chalstrom, Assistant Attorney General, of counsel), for respondents.

JUSTICE JOSEPH GORDON delivered the opinion of the court:

On November 7, 2005, petitioner, Susan Budzileni, filed a two-count charge of discrimination with the Illinois Department of Human

Rights (Department of Human Rights), alleging that her employer, respondent, the Illinois Department of Commerce and Economic Opportunity (IDCEO), discriminated against her by denying her (1) equal pay (count I) and (2) equal terms and conditions of employment (count II), based on her gender in violation of section 2—102(A) of the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/2—102(A) (West 2004)). After conducting an initial investigation, on October 23, 2006, the Department of Human Rights issued a notice of dismissal for lack of substantial evidence as to both counts of petitioner's charge. However, after petitioner filed a request for review by the chief legal counsel of the Department, on August 13, 2007, the chief legal counsel vacated the dismissal order and reversed for further investigation into both counts. Upon further investigation, on August 20, 2007, the Department of Human Rights issued a second notice of dismissal, this time, however, based upon lack of jurisdiction as to both counts. When petitioner filed a second request for review by the chief legal counsel of the Department, on February 25, 2008, the chief legal counsel sustained the Department's dismissal as to count II of petitioner's discrimination charge (alleging unequal terms and conditions of employment) but reversed the dismissal order with respect to count I of petitioner's discrimination charge (alleging unequal pay) and ordered further investigation into that count. Only four days after this order was entered by the chief legal counsel, on February 28, 2008, the Department of Human Rights issued its third and final notice of dismissal with respect to count I (unequal pay). This time, the Department of Human Rights found that it lacked jurisdiction to consider some of the allegations of unequal pay, as these allegedly discriminatory payments had occurred 180 days prior to petitioner's filing of her discrimination charge. With respect to the remaining allegations of unequal pay which had occurred within the 180-day filing period, the Department of Human Rights concluded that petitioner had failed to present substantial evidence of unlawful discrimination. On July 14, 2008, the chief legal counsel sustained the Department's dismissal and petitioner now appeals.

Apparently, while petitioner's charge was pending before the Department of Human Rights, on February 10, 2005, petitioner sought parallel relief through a different agency, by filing a complaint against the IDCEO in the Illinois Department of Labor (IDOL), wherein she alleged a violation of the Illinois Equal Pay Act of 2003 (Illinois Pay Act) (820 ILCS 112/10 (West 2004)). The following parallel proceedings before the IDOL took place. On January 16, 2006, the IDOL held a hearing in petitioner's case wherein witnesses were called by both petitioner and the IDCEO. On June 30, 2006, the administrative law

judge (ALJ) presiding over the hearing found in favor of petitioner and remanded the matter to the IDOL "to assert back wages according to the statute." However, upon rehearing the ALJ reversed the prior order finding that the IDCEO had not violated the Illinois Pay Act.[1]

The decision of the IDOL is not the subject of this appeal. Rather, on appeal, petitioner solely challenges the decision of the chief legal counsel of the Department of Human Rights, contending that he erred in sustaining the Department's dismissal of her discrimination charge with respect to count I (unequal pay). Petitioner also does not challenge the Department's dismissal order with respect to count II (unequal terms and conditions of employment). With respect to count I, petitioner contends that she presented sufficient evidence before the Department of Human Rights to establish a *prima facie* case of sex discrimination based upon disparate pay by the IDCEO. Petitioner asserts that in dismissing her discrimination charge, the Department of Human Rights: (1) misinterpreted prevailing Illinois law regarding sex discrimination by setting an impermissibly high standard for "substantial evidence" and (2) improperly rendered credibility determinations in favor of respondent, in violation of a federal court injunction against the weighing of credibility at the investigative stage of a proceeding under the Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 2004)). Petitioner further contends that the Department's final notice of dismissal of her discrimination charge was improper because it was made hurriedly and summarily only four days after the chief legal counsel's second reversal of the Department's dismissal, without any further investigation. For the reasons that follow, we affirm.

## I. BACKGROUND

### 1. Petitioner's Initial Charge and the IDCEO's Response

On November 7, 2005, petitioner filed a two-count charge of unlawful discrimination with the Department of Human Rights, alleging that her employer, the Illinois Department of Commerce and Economic Opportunity, discriminated against her by subjecting her to (1) unequal pay (count I) and (2) unequal terms and conditions of

---

[1]We note that the record on appeal does not contain all the relevant pleadings with respect to petitioner's claim before the IDOL, but merely contains bits and fragments of those proceedings. In addition, although petitioner specifically fails to attach the final order of the IDOL dismissing her claim under the Illinois Pay Act, she concedes that the final order of that agency found in favor of the IDCEO.

employment (count II), based upon her sex and in violation of section 2—102(A) of the Illinois Human Rights Act (775 ILCS 5/2—102(A) (West 2004)).[2] Because petitioner makes no challenge to the dismissal of count II of her discrimination charge (unequal terms and conditions of employment), but only asserts errors in the Department's findings with respect to unequal pay under count I, we need not set forth in much detail the facts relevant to count II. Instead, for purposes of brevity, we focus on the allegations and procedural history of count I.

In her charge of unlawful discrimination with respect to count I (unequal pay) petitioner alleged that from February 2004 to the present, the IDCEO had paid her less than two similarly situated male employees, David Streicker and Kyle Barry. Petitioner alleged that although she was more experienced than Streicker and Barry, performed work of equal skill, effort, and responsibility under similar working conditions, each man's $85,000 annual salary exceeded hers by more than $25,000. In her charge, petitioner acknowledged that the IDCEO's announced reason for the disparity in pay was the difference in petitioner's job title. She further conceded that while she had initially been hired in June 1999, as a public service administrator (PSA), and continued to perform duties of a PSA at the time she filed her charge, Streicker and Barry were hired in February 2004, as senior public services administrators (SPSA), a position supervisory to her own. Petitioner asserted, however, that these purported differences were merely pretextual.

On May 30, 2006, the IDCEO filed a verified response to petitioner's charge of discrimination with the Department of Human Rights, denying that the difference between petitioner's salary and the salaries of the two named male comparatives was a result of petitioner's gender. In its verified response, the IDCEO admitted that it hired petitioner as a PSA in June 1999. It also admitted that two male employees were hired as SPSAs in February 2004, at a salary of $85,000 per year, approximately $25,000 per year more than petitioner's salary. Although the pay scale for an SPSA is different than that for a PSA, the IDCEO denied that the difference in job titles was the

---

[2]We note that petitioner's charge also alleged violations of both the Equal Pay Act of 1963 (29 U.S.C. §206(d)(1) (2000)) and title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000a *et seq.* (2000)). However, because petitioner did not raise these issues in the Department of Human Rights below, nor raise them here on appeal, we need not discuss them in detail. Moreover, we note that throughout its order sustaining the Department's dismissal of petitioner's charge, the chief legal counsel referred to petitioner's action as one brought under section 2—102(A) of the Human Rights Act (775 ILCS 5/2—102(A) (West 2004)).

sole basis for the salary differential between petitioner and the two male employees. Rather, according to the IDCEO, that pay disparity also resulted from the fact that the two men were hired to perform different duties, involving far more skill and responsibility than petitioner's position had or would have required.

## 2. Department of Human Rights' Initial Investigation and First Dismissal of the Charge

The Department of Human Rights investigated the matters raised by petitioner and on October 23, 2006, issued a notice dismissing both counts of defendant's charge based upon a lack of substantial evidence. In support of its dismissal, the Department of Human Rights attached voluminous records of its investigation. Those records reveal, among other things, that an investigator for the Department of Human Rights interviewed petitioner, Streicker, Jeanine Jiganti, former general counsel for the IDCEO and petitioner's supervisor, as well as Kathleen Bruns, formerly employed as an SPSA by the IDCEO. The investigator also reviewed numerous exhibits submitted by the parties, including a copy of petitioner's posthearing brief filed in her separate action before the IDOL alleging that the IDCEO had violated the Illinois Pay Act (820 ILCS 112/10 (West 2004)).

According to those submitted pleadings, and the exhibits attached thereto, petitioner made the following allegations relevant to the issues in this appeal. Petitioner has been a licensed attorney for over 13 years, with substantial experience working within the state government. Petitioner brought this relevant experience with her to the IDCEO in 1999 when she was first hired by the IDCEO as an attorney, in the position of PSA at a starting salary of just $41,172. For the next five years, together with two other female employees, Kathleen Bruns and Erin Davis, petitioner performed all of the legal work for all of the bureaus served by the IDCEO, developing extensive expertise in the work of the IDCEO. When Kathleen Bruns resigned on January 30, 2004, petitioner and Erin Davis performed all of the legal work for all of the bureaus. In October 2003, the IDCEO hired Jeanine Jiganti as general counsel for the IDCEO. Upon her arrival, Jiganti was surprised to find that only two individuals, petitioner and Erin Davis, were performing the majority of the legal work and that petitioner's salary was as low as it was considering the amount of work she was performing. Jiganti informed petitioner that she intended to hire two more attorneys to help distribute the workload. Soon thereafter, two men, David Streicker and Kyle Barry, were hired, and Jiganti requested that petitioner train them. Once Streicker and Barry were hired, Jiganti ended the IDCEO's existing work distribution policy, involving a

task-by-task allocation of work to all attorneys, and replaced it with a policy of assigning each of the agency's bureaus to a specific attorney, who would then handle all legal matters associated with that particular bureau. Although petitioner was permitted first choice of bureau assignments due to her expertise and seniority, and Streicker and Barry were allocated the remaining bureaus, Jiganti continued to reassign many of Streicker's and Barry's tasks to petitioner because the two men lacked the expertise and experience to perform them. When petitioner learned that Streicker and Barry had been hired as SPSAs, she approached her supervisor, Jiganti, and inquired as to why she had not been informed of the vacancies prior to the new hires. Jiganti told petitioner simply that she "should have been aware of the postings."

The Department's investigator reported the following factual findings. During her interview with the investigator, Jeanine Jiganti, former general counsel of the IDCEO and petitioner's former direct supervisor, explained that all State employees' salaries, including those of the IDCEO employees, are determined according to an annual pay plan, which is revised and approved by the Illinois Department of Central Management Services (CMS) each fiscal year. Jiganti stated that to calculate starting salaries for PSA or SPSA positions, the IDCEO first requests the applicant's prior salary history. Pursuant to CMS guidelines, the IDCEO has the opportunity to raise the applicant's salary up to 10% of the applicant's last recorded salary. If the applicant's prior salary, however, is greater than the pay scale permitted for the position (PSA or SPSA), the applicant's salary is determined based on a "negotiated rate," so long as it is within the pay scale for the position.

The investigator's report established that this hiring procedure was derived from section 310.490 of title 80 of the Illinois Administrative Code, which states in pertinent part:

"b) Entrance Salary—Normally upon entry to state service, an employee's base salary will be at the minimum salary of the salary range.

1) Qualifications above Minimum Requirements—

A) If a candidate possesses directly related training and experience in excess of the minimum requirements of the class specification, the employing agency may grant an entrance salary up to the midpoint of the first half of the salary range; however, this shall not provide more than a 10% increase over the candidate's current salary. Such qualifications above the minimum requirements must possess documented support for higher than the minimum entrance salary.

B) An entrance salary above the middle of the first half of the salary range must have prior approval of the Director of [CMS]. This approval will be based on consideration of the candidate's training and experience exceeding the requirements of the class, prior salary history, particular staffing requirements for an agency, and labor market influence on recruitment needs.

2) Area Differential—For position where additional compensation is required because of dissimilar economic or other conditions in the geographical area in which such positions are established a higher entrance salary may be authorized by the Director of [CMS]." 80 Ill. Adm. Code §310.490(b), amended at 20 Ill. Reg. 15018, eff. November 7, 1996.

The personnel files of all the attorneys employed either as PSAs or SPSAs from the time period between June 1999 up to the present revealed the following. Petitioner was hired as a PSA in the Chicago office on June 1999 at a starting salary of $41,172 per year. Prior to her employment with the IDCEO, petitioner worked as an assistant Attorney General in the revenue litigation bureau of the Illinois Attorney General's office from September 1995 to May 31, 1999, at a salary of $37,248. According to the CMS-approved pay plan in June 1999, the range of annual salaries for a PSA position was between $31,344 and $68,508, and the IDCEO could have started petitioner at an entrance salary less than what she had been making as an assistant Attorney General. However, the IDCEO took advantage of the 10% rule and raised petitioner's entrance salary to 10.53% more than her prior salary. Due to cost-of-living salary increases, at the time of the investigation, petitioner was earning approximately $61,800 per year.

David Streicker (male) was hired as an SPSA in the Chicago office in February 2004 at an annual salary of $85,000. According to the CMS-approved pay plan in February 2004, the salary range for an SPSA was between $49,560 and $116,460 and the advertisement for the position indicated that the salary would be determined "based on the candidate." Prior to coming to the IDCEO, Streicker was employed in the private sector at an annual salary of $145,000. Streicker took a 42% pay cut when he came to the IDCEO. He filled a vacant attorney position replacing the previous SPSA, Andrew Boron. Streicker is currently earning an annual salary of $88,329.

Andrew Boron (male) was employed by the IDCEO between October 2003 and November 2003 as an SPSA at an annual salary of

$65,000.[3] He came to the IDCEO from private practice where he was earning the same amount.

Kyle Barry (male) was hired as an SPSA in the Springfield office on February 2004, at an annual salary of $85,000. Prior to coming to the IDCEO, Barry was employed in the private practice of law at a salary of $210,000 per year. When he came to the IDCEO, Barry took a 60% pay cut, filling a vacant position replacing Kathleen Bruns. Barry resigned in October 2005.

Kathleen Bruns (female) was initially hired by the IDCEO as a PSA in July 1995 at an annual salary of $47,220. She came to the IDCEO from the Illinois Department of Energy and Natural Resources, where she was earning the same amount. In December 1996, Bruns was promoted to an SPSA at a new annual salary of $55,668. Bruns' salary increased over the years, and prior to her resignation in January 2004, she earned $92,952 per year.

Puja Kahjani (female) was hired as a PSA in the Chicago office in February 2006 at an annual salary of $63,000. Prior to this position, she worked in the private sector and had a salary of $60,000 per year. When she came to the IDCEO, Kahjani received a 5% increase and filled a vacant position replacing Erin Davis.

Erin Davis (female) was initially hired in June 2003 as a PSA in the Springfield office at an annual salary of $46,500.[4] Prior thereto, she worked in the private sector at an equivalent salary. In April 2004, Davis was promoted to the SPSA position and given a starting annual salary of $55,200. Due to a nonunion 4% salary increase, at the time of the investigation Davis was earning $57,408 per year.

Kyle Kirts (male) was hired in August 2002 as a PSA in the Springfield office at an annual salary of $46,848. Prior to this position, Kirts was employed in the private practice of law and had a salary of $42,588. When he started at the IDCEO, Kirts received a 10% pay increase.

The investigation further revealed that during her interview with an investigator from the Department of Human Rights, Jiganti stated, consistent with the position of the IDCEO, that one of the reasons for the disparate salaries was that Streicker and Barry were hired into different positions than petitioner. While petitioner held the position of PSA, Streicker and Barry were hired as SPSAs. Petitioner is a

---

[3]The salary range for the SPSA position was the same at the time Boron and Streicker were employed.

[4]At the time Davis was first hired as a PSA in June 2003, the PSA vacancy announcement indicated that the salary range for the position was $35,952 through $78,696.

"merit employee," and there is no time limit on the duration of her employment with the IDCEO. Streicker and Barry, on the other hand, are term employees and their appointments as SPSAs expire (unless renewed) four years after their appointment.

According to the investigator's report, the jobs of a PSA and an SPSA involve different duties. The job description for a PSA states that "under the administrative direction of a Chicago SPSA legal counsel, [the PSA] functions as a legal advisor to the Director and the operational division of the [IDCEO] [and] handles all matters of a confidential and sensitive nature in the interest of the Agency" including, *inter alia*, (1) providing advice and recommendations with respect to collection of business development loans, confidential negotiation of workout and settlement agreements, and bankruptcy negotiations; (2) providing legal advice with respect to the IDCEO's collection policies; (3) drafting and negotiating conditions and terms of loan agreements; (4) performing confidential work for senior management relating to internal programs and activities, issuing opinions with respect to conflict of interest questions, statutory interpretation, and pending legislation; and (5) acting as a hearing officer for departmental representatives in administrative hearings and appeals brought pursuant to the Illinois Administrative Procedure Act (5 ILCS 100/1—1 *et seq.* (West 2006)), departmental rules or federal regulations.

On the other hand, the job description for an SPSA states that the SPSA "is subject to administrative approval [and direction] by the Chief legal counsel of the [IDCEO], plans, develops, formulates and supervises the activities of the legal staff ***, drafts highly confidential legal documents, and assists Chief legal counsel in providing legal advice and direction to the Director and operational managers; [and] handles all matters of a confidential and sensitive nature in the interest of the Agency," including, *inter alia*, (1) supervising subordinate staff (including PSAs), in the assignment of duties and litigation, by planning, assigning, prioritizing, coordinating evaluating, reviewing and maintaining records of performance of subordinates and providing appropriate training, technical assistance and coaching for subordinates; (2) approving time off, promotions, demotions disciplinary actions, and attempts to resolve grievances for all subordinate staff; (3) counseling the agency director, deputy directors and division managers on legal issues, policies and procedures and matters affecting operations of the IDCEO's programs (such as drafting, revising, amending and reviewing complex commercial agreements, including, *e.g.*, loans, royalty and equity agreements; formulating procedures by directing and reviewing legal research on federal and state laws, and proposed legislation, that affect state and federally funded programs adminis-

tered by the IDCEO); and (4) acting as the primary hearing officer for the IDCEO and representing the agency before the Department of Human Rights in fact-finding conferences.

During her interview, Jiganti further stated that both Streicker and Barry came to the IDCEO with extensive business backgrounds and actual litigation experience. Streicker was hired to create and run the Grant Funds Recovery Program, which included putting procedures in place to establish a formal hearing process. He was also assigned as the program director for the "Base Realignment and Closure Commission" (BRAC) project, which involved evaluating candidates, drafting contracts, and working with consultants to organize a publicity launch of the program. According to Jiganti, this "high profile" project required "a higher degree of skill and responsibility than what was expected from PSAs."

Jiganti also reported that as petitioner's supervisor between May 31, 2003, and June 1, 2004, she evaluated petitioner and rated her overall performance as "satisfactory." Jiganti, however, rated petitioner's teamwork as "unacceptable," explaining that petitioner was not a team player, and when new attorneys came to the IDCEO, she resisted in training or helping them. According to Jiganti, petitioner attempted to justify her position by asserting that when she started working at the IDCEO she had to learn everything by herself and that, therefore, the new attorneys should be required to learn on their own as well.

On the other hand, the investigation also disclosed that when she was interviewed by the Department's investigator, Kathleen Bruns, former PSA and later SPSA, as well as petitioner's prior supervisor, stated that former coworkers had told her that there were many complaints about Barry's and Streicker's lack of knowledge and their inability to perform legal services adequately. Bruns admitted, however, that she had very little contact with the two men herself. Specifically, Bruns indicated that she met Streicker briefly prior to resigning from the IDCEO and that she only met Barry after she left the agency.

Based on the aforementioned investigation, the Department of Human Rights found that petitioner had not been subjected to unequal pay based upon her gender and that there had been no evidence of animus based on sex. Specifically, the Department of Human Rights found that petitioner's named male comparatives, Streicker, Barry, and Andrew Boron, held supervisory SPSA positions (with a pay scale salary range between $49,560 and $116,460), while petitioner was employed as a PSA (with a pay scale salary range between $35,952 and $78,696). The Department further found that although all of the

SPSAs and PSAs were paid within their position's salary ranges, a female SPSA, Kathleen Bruns, had been paid more than male SPSAs Streicker, Barry and Boron. The Department further found that the IDCEO determined new employees' starting salaries based on the pay guidelines articulated under section 310.490 of title 80 of the Illinois Administrative Code. The Department also noted that, when hired by the IDCEO, petitioner received the greatest percentage increase in her salary of any other new employee hired by the IDCEO (*i.e.*, petitioner received a salary increase of 10.53% while a male comparative, Kyle Kirts, also hired as a PSA, received an increase of only 10%; both Streicker and Barry accepted substantial pay cuts; and Andrew Boron, an SPSA, received a 5% increase).

### 3. Petitioner's First Request for Review With the Chief Legal Counsel of the Department of Human Rights

On November 27, 2006, petitioner filed a request with the chief legal counsel of the Department of Human Rights for review of the Department's dismissal of her sex discrimination charge. Petitioner contended that the dismissal was erroneous in light of a favorable ruling she had obtained after a full evidentiary public hearing before a different agency, the IDOL, on June 30, 2006, in a substantially similar claim against the IDCEO, wherein she had alleged a violation of the Illinois Pay Act (820 ILCS 112/10 (West 2004)). In support of this argument, petitioner attached as exhibits copies of the IDOL's June 30, 2006, order finding that the IDCEO had violated the Illinois Pay Act (820 ILCS 112/10 (West 2004)) and remanding the cause to a compliance officer to assert back wages owed to petitioner, as well as briefs that she had submitted to the IDOL in support of her Pay Act claim.

In her request for review with the chief legal counsel of the Department of Human Rights, petitioner also asserted that the Department's investigation had: (1) improperly made credibility determinations in violation of *Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999); (2) set an impermissibly high "substantial evidence" standard; and (3) erroneously relied upon Streicker's and Barry's salary histories with prior employers to justify the pay differentials between petitioner and the male employees.

### 4. Chief Legal Counsel's First Vacature of the Department's Dismissal Order and Remand for Further Investigation

On August 13, 2007, the chief legal counsel of the Department of Human Rights vacated the Department's dismissal of petitioner's unlawful discrimination charge as to both counts and remanded the matter for further investigation to determine whether substantial evidence existed that the IDCEO discriminated against the petitioner

based on her gender. The chief legal counsel also ordered the Department of Human Rights to determine whether petitioner's allegations of unequal pay were timely filed, *i.e.*, filed within 180 days after the date on which the civil rights violation allegedly occurred. In that respect, the chief legal counsel noted that each alleged payment of unequal wages was a separate and discrete incident, constituting a separate violation of the Human Rights Act, so that the allegations could not be analyzed under a "continuing violation" theory.

### 5. The Department of Human Rights' First Addendum to the Investigation of Petitioner's Charge and Second Dismissal of That Charge

Pursuant to the order of the chief legal counsel, on August 20, 2007, and after further investigation, the Department of Human Rights again issued a notice dismissing both counts of petitioner's discrimination charge, this time based on a finding of lack of jurisdiction. In doing so, the Department of Human Rights issued an addendum to its investigation report.

According to that addendum, the Department of Human Rights found that because a discrimination charge must be filed within 180 days of the date when the harm was actually incurred, petitioner's charge was untimely and the Department lacked jurisdiction to investigate. Specifically, the Department's investigation revealed that petitioner had filed her charge on November 7, 2005, alleging that she was subjected to unequal wages from February 2004 to the present, because two male employees were hired in February 2004 at salaries exceeding hers. According to the Department's report, the investigation revealed that Streicker was hired on February 17, 2004, while Barry was hired on February 25, 2004. Accordingly, when petitioner filed her charge on November 7, 2005, she did so 629 days after Streicker was hired and 621 days after Barry was hired, well over the 180-day time limit from the date of harm incurred. The Department therefore found that it lacked jurisdiction to consider petitioner's allegations.[5]

---

[5]We note that with respect to the substance of petitioner's allegations of unequal pay, the first addendum to the investigation report reveals that petitioner offered no additional evidence with respect to her charge of discrimination, while the IDCEO submitted additional documentation, revealing the following: (1) Streicker was hired on February 17, 2004, as an SPSA with a probationary term appointment which was to expire on February 16, 2008, and that on October 14, 2005, he was promoted to acting general counsel for the IDCEO with a salary adjustment; and (2) that Barry was hired on

### 6. Petitioner's Second Request for Review With the Chief Legal Counsel

On September 25, 2007, petitioner filed her second request for review of the Department's dismissal of her charge with the chief legal counsel. In that request, petitioner complained that the addendum was issued too quickly, only five working days after the chief legal counsel's order remanding the cause for further investigation, and that the investigator for the Department did not involve her in this second investigation at all. Petitioner further complained that the Department incorrectly measured the 180-day period for filing the charge from the dates when Streicker and Barry were hired, contending that because each period covered by discriminatory compensation is newly actionable for a period of 180 days, all charges arising during such 180 days prior to the filing of the charge would be timely. Petitioner also asserted that any determination that she did not perform work similar to that of Streicker and Barry rested upon a credibility determination as to the truth of her assertions to the investigator that she was more experienced than the men and that the three of them performed the same work but for different bureaus within the IDCEO or on different projects. She contended that such credibility determinations may not be made during the investigatory stage of the proceedings under the Human Rights Act (775 ILCS 5/1— 101 *et seq.* (West 2004)). Petitioner also asserted that it was evident that she was "more experienced" than Streicker and Barry because during the IDCEO's reorganization, she was given first choice of which IDCEO bureau to head. In support of her contentions, petitioner again attached as exhibits, an order of the IDOL decision in her separate Illinois Pay Act claim before that agency, as well as all the memoranda she submitted to the IDOL in support of that claim.

### 7. Chief Legal Counsel's Second Vacature of the Department's Dismissal Order With Respect to Petitioner's Unequal Pay Count and Remand for Further Investigation

On February 25, 2008, the chief legal counsel of the Department of Human Rights vacated the Department's dismissal order with respect to petitioner's unequal pay count and remanded that count for further investigation in order to determine whether substantial evidence existed that the IDCEO discriminated against her petition because of her sex. The chief legal counsel also reiterated that each al-

---

February 25, 2004, as an SPSA with a probationary term appointment that was to expire on February 14, 2008, and that he resigned from the IDCEO on October 14, 2005.

leged payment of unequal wages is a separate and discrete incident and ordered that the Department of Human Rights determine again whether petitioner's allegation of unequal pay was timely filed. The chief legal counsel, however, sustained the dismissal of petitioner's allegations with respect to unequal terms and conditions of employment on the basis of lack of jurisdiction.

### 8. The Department of Human Rights' Second Addendum to the Investigation of Petitioner's Charge, and Third Dismissal of That Charge

Pursuant to the order of the chief legal counsel, on February 28, 2008, the Department of Human Rights again issued a notice dismissing petitioner's charge with respect to the remaining unequal pay allegations for lack of jurisdiction. In doing so, the Department of Human Rights issued a second addendum to its investigation report explaining its conclusions. According to that report, the Department found that it lacked jurisdiction to investigate the allegations of unequal pay that occurred prior to May 11, 2005, which were more than 180 days before petitioner filed her charge on November 7, 2005. However, because incidents of unequal pay that occurred between May 11, 2005, and November 7, 2005, had been timely filed, the Department concluded that it had jurisdiction to investigate them.

With respect to the remaining instances of unequal pay, the investigation report reiterated its previous conclusions and rationale as detailed in its initial investigation report and recommended that the charge be dismissed on the basis of lack of substantial evidence.[6]

### 9. Petitioner's Third Request for Review With the Chief Legal Counsel

On April 3, 2008, petitioner filed a third request for review with the chief legal counsel of the Department of Human Rights. In that request, petitioner first argued that the second addendum report was issued too quickly, only four days after the chief legal counsel entered an order remanding for further investigation, and again without any contact between the Department's investigator and petitioner or her counsel. In support of this contention, petitioner attached as exhibits affidavits from herself and her counsel both admitting that during each of the prior remands, petitioner refused to agree to the Department's requests for an extension of time to complete the investigation, but asserting that each time petitioner told the

---

[6]In this respect, we note that the investigation report revealed that no additional witness information or exhibits were considered and that petitioner offered no new evidence with respect to her claim.

investigator that both she and her counsel were "ready, willing and able to meet with [the investigator] and/or provide any information that would allow [the investigator] to complete the investigation as defined by the [c]hief legal counsel in the remand order."

Petitioner also challenged the Department's lack of substantial evidence finding, arguing that the Department's second addendum to the investigation merely "recycled" the Department's initial investigation and findings. Petitioner reasserted the same arguments she had made in her first request for review, adding, *inter alia*, that (1) the Department had made improper credibility determinations in light of her explanation that she performed the same work Barry and Streicker did and that she had more seniority at the IDCEO than Barry and Streicker because she had been offered first choice of bureau assignments when the IDCEO was reorganized; (2) the decision of the IDOL in her Illinois Pay Act claim before that agency alone provided substantial evidence to support her sex discrimination claim before the Department of Human Rights and (3) the difference in job titles between her and the men was of no consequence under Illinois law.

## 10. Chief Legal Counsel's Final Order

On July 14, 2008, the chief legal counsel of the Department of Human Rights sustained the Department's dismissal of petitioner's discrimination charge based on unequal pay. The chief legal counsel first determined that the Department lacked jurisdiction to investigate the allegations of unequal pay that occurred between February 2004 and May 11, 2005. The chief legal counsel then sustained the substantive dismissal of the allegations of unequal pay that occurred between May 11, 2005, and November 7, 2005, finding that there was a lack of substantial evidence that the IDCEO had subjected petitioner to lower wages based on her sex.

In support of his substantive findings, the chief legal counsel noted that petitioner is not similarly situated to Streicker and Barry. Petitioner was hired to perform the duties of a PSA while Streicker and Barry were hired to perform the duties of an SPSA. In those positions, Streicker and Barry were supervisors, who directed, trained and evaluated the subordinate staff in their assignments and duties, while petitioner worked under their supervision. The chief legal counsel also found that petitioner's job duties differed from those of Streicker and Barry, detailing the different job descriptions. In addition, the chief legal counsel noted that there is no substantial evidence that the IDCEO's articulated legitimate, nondiscriminatory reason for paying petitioner less than Streicker and Barry, namely, that the positions for

which the men were hired entailed different duties requiring greater skill and imposing greater responsibilities, was a pretext for unlawful discrimination. The chief legal counsel also noted that the Department's investigation revealed that the IDCEO adhered to the CMS pay plan in setting the salaries of petitioner, Streicker and Barry when it hired them and that petitioner received a 10% pay increase over her prior salary while Streicker and Barry each took pay cuts. Accordingly, there was no evidence that the IDCEO harbored a sex-based animus or that there was a nexus between petitioner's lower salary and her sex.

The chief legal counsel finally noted that petitioner failed to provide any additional evidence in her request for review that would warrant reversal of the Department's original determination. With respect to the decision of the IDOL in petitioner's separate Illinois Pay Act claim before that agency, which petitioner submitted as an exhibit to her request for review, the chief legal counsel noted that the documents presented with that exhibit had been reviewed both by the Department of Human Rights during its investigation, as well as by the chief legal counsel himself. However, the chief legal counsel found that these documents were "neither relevant nor material to the allegations" in petitioner's request for review, because "the Department [of Human Rights] and the IDOL are governed by different statutes and a decision made by the IDOL has no bearing on the outcome of the Department's investigation."

Petitioner now appeals.

## II. ANALYSIS

### 1. Petitioner's Failure to Comply with Supreme Court Rules 341 and 342

Prior to addressing the merits of this appeal, we must first direct our attention to the IDCEO's request that we strike petitioner's brief and dismiss this appeal based upon petitioner's failure to comport with the requirements of Supreme Court Rules 341(h) (210 Ill. 2d R. 341(h)) and 342(a) (210 Ill. 2d R. 342(a)). The IDCEO points out that in violation of Supreme Court Rule 341(h), in her brief, petitioner has failed to provide any citation to the record on appeal in: (1) the statement of jurisdiction (210 Ill. 2d R. 341(h)(4)(ii)[7]); (2) the statement of

---

[7]The rule states in pertinent part that in her brief an appellant must include "a brief, but precise statement or explanation under the heading 'Jurisdiction' of the basis for appeal including the supreme court rule or other law which confers jurisdiction upon the reviewing court; the facts of the case which bring it within this rule or other law; and the date that the order being

facts (210 Ill. 2d R. 341(h)(6)[8]); and (3) the argument section (210 Ill. 2d R. 341(h)(7)[9]). Rather, petitioner has provided "sporadic citations" to the appendix to her brief. According to the IDCEO this appendix, too, is insufficient because it does not contain a table of contents to the record on appeal or a copy of the petition for review as required under Supreme Court Rule 342(a) (210 Ill. 2d R. 342(a)[10]). As a result, the IDCEO requests that we strike petitioner's brief or disregard her arguments on appeal.

■ While we acknowledge that where the appellant's brief violates the requirements of our supreme court rules, the "appellate court has discretion to strike [that] brief and dismiss the appeal" or disregard appellant's arguments (*Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845, 747 N.E.2d 926 (2001); see *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 886, 637 N.E.2d 1103 (1994)), " '[w]here violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted.' " *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1101, 899 N.E.2d 582, 586 (2008), quoting *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 527, 691 N.E.2d 191, 197 (1997). Although our review of petitioner's brief and appendix reveals that petitioner's brief fails to comply with Rules 341(h) and 342(a), we conclude that petitioner's violations of those rules do not hinder our

appealed was entered and any other facts which are necessary to demonstrate that the appeal is timely. *** *All facts recited in this statement shall be supported by page references to the record on appeal.*" (Emphasis added.) 210 Ill. 2d R. 341(h)(4)(ii).

[8]The rule states in pertinent part that in her brief an appellant must include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case *** and with appropriate reference to the pages of the record on appeal *** or to the pages of the abstract." 210 Ill. 2d R. 341(h)(6).

[9]The rule states in pertinent part that in her brief appellant shall include an "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *and the pages of the record relied on.* Evidence shall not be copied at length, but reference shall be made to *the pages of the record on appeal or abstract,* if any, where evidence may be found." (Emphasis added.) 210 Ill. 2d R. 341(h)(7).

[10]This rule states in relevant part: "The appellant's brief shall include, as an appendix, a table of contents to the appendix, a copy of the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered *** by any administrative agency or its officers, any pleadings or other materials from the record which are the basis of the appeal or pertinent to it, the notice of appeal, *and a complete table of contents, with page references, of the record on appeal.*" (Emphasis added.) 210 Ill. 2d R. 342(a).

review of the case, since we have the benefit of the record before us, as well as the IDCEO's proper citations to the record on appeal. Accordingly, we will not strike petitioner's brief and instead turn to the merits of this appeal. See *Hurlbert*, 386 Ill. App. 3d at 1101, 899 N.E.2d at 586.

## 2. Petitioner's Sex Discrimination Charge Pursuant to the Illinois Human Rights Act

■ Petitioner contends that the chief legal counsel of the Department of Human Rights erred in sustaining the Department's dismissal of her charge of discrimination with respect to her allegations of unequal pay brought under section 1—202 of the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 2004)). This Act prohibits "unlawful discrimination," *i.e.*, discrimination against a person on the basis of, *inter alia*, his or her race, color, religion, national origin, ancestry, age, sex, marital status, or handicap. 775 ILCS 5/1—102 (West 2004). The Human Rights Act specifically defines the following conduct as a civil rights violation in the employment context:

"It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2—102 (West 2004).

Under the Human Rights Act, an aggrieved employee may file a discrimination charge against the employer with the Department of Human Rights within 180 days of the date that the civil rights violation allegedly has been committed against him or her. 775 ILCS 5/7A—102(A)(1) (West 2004). After receipt of a charge, the Department of Human Rights must notify respondent and permit each party time to file a position statement and any other material that the party finds relevant to his or her cause. 775 ILCS 5/7B—102(B) (West 2004). After respondent is notified, the Department must conduct a full investigation of the allegations set forth in the charge and provide a written report of such an investigation. 775 ILCS 5/7B—102(C), (D) (West 2004). After reviewing the investigation report, the Department of Human Rights must determine whether there is substantial evidence that the alleged civil rights violation has been committed. 775 ILCS 5/7A—102(D)(2) (West 2004). Under the Human Rights Act, substantial evidence is defined as evidence "which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A—102(D)(2) (West 2004). If the Depart-

ment of Human Rights determines that there is no substantial evidence, the charge is dismissed. 775 ILCS 5/7A—102(D)(2)(a) (West 2004).

■ If the charge is dismissed by the Department of Human Rights, the dismissal is reviewable by the Department's chief legal counsel. 775 ILCS 5/7A—102(D)(2)(a) (West 2004). The chief legal counsel's order reviewing the dismissal is a final and appealable order (775 ILCS 5/7A—102(D)(2)(a) (West 2004)), and petitioner may seek review of the chief legal counsel's order in the appellate court (775 ILCS 5/8—111(A)(1) (West 2004)).

The standard of review on appeal is whether the Department's chief legal counsel abused his discretion. *Anderson v. Chief Legal Counsel*, 334 Ill. App. 3d 630, 634, 778 N.E.2d 258, 261 (2002); see also *Welch v. Hoeh*, 314 Ill. App. 3d 1027, 1034, 733 N.E.2d 410 (2000) ("we may not reweigh the evidence or substitute our judgment for that of the Department. [Citation.] Our review is limited to deciding whether the chief legal counsel's *** decision dismissing the claim *** is 'arbitrary and capricious or an abuse of discretion.' [Citation.]"). A decision is arbitrary and capricious only if it "contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an implausible explanation contrary to agency expertise." *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1177, 836 N.E.2d 64, 69 (2005); see also *Deen v. Lustig*, 337 Ill. App. 3d 294, 302, 785 N.E.2d 521, 529 (2003), quoting *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435, 711 N.E.2d 471, 474 (1999) ("[a]n abuse of discretion is found when a decision is reached without employing conscientious judgment or when the decision is clearly against logic").

In the present case, in sustaining the dismissal of petitioner's claim of unlawful sex discrimination based upon unequal pay, the chief legal counsel found that the Department lacked jurisdiction to investigate the allegations of unequal pay that occurred between February 2004 and May 11, 2005, and that petitioner had failed to present substantial evidence supporting a *prima facie* case of sex discrimination with respect to the allegations of unequal pay from May 11, 2005, to November 7, 2005. With respect to the latter, as already noted above, the chief legal counsel specifically found, *inter alia,* that there was no substantial evidence that the IDCEO's articulated reasons for paying petitioner less than the two male comparatives, *i.e.*, that the men were not similarly situated, that they held different positions and that they were hired to perform different job duties involving more skill and responsibility than petitioner had, were not a pretext for unlawful discrimination.

In her reply brief, petitioner concedes that the Department of Human Rights would have lacked jurisdiction to consider the allegations of unequal pay that occurred between February 2004 and May 11, 2005. She contends, however, that with respect to the remaining allegations, she presented sufficient evidence to establish a *prima facie* case of sex discrimination based upon unequal pay.

In that respect, petitioner first contends that the Department of Human Rights applied an erroneous legal standard in determining that she failed to present sufficient evidence to establish a *prima facie* case when it found that the IDCEO's articulated, legitimate, nondiscriminatory reason for paying petitioner lower wages was not a pretext for unlawful discrimination. She argues that in making this determination, the Department of Human Rights erroneously applied the three-prong standard utilized in analyzing discrimination actions brought under title VII of the Civil Rights Act of 1964[11] (42 U.S.C. §2000e *et seq.* (2000)), instead of applying the analysis used in federal cases brought under section 206(d)(1) of the Equal Pay Act of 1963 (Equal Pay Act)[12] (29 U.S.C. §206(d)(1) (2000)). Petitioner asserts that as a result, the Department set an impermissibly high standard for "substantial evidence." For the reasons that follow, we disagree.

In that respect, we first note that petitioner, here, brought her charge of discrimination pursuant to the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 2004)). In *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684 (1989), our supreme court recognized that in evaluating charges of discriminatory hiring practices brought under this Act (775 ILCS 5/2—102(A) (West 2004)), the Department of Human Rights and the Illinois appellate courts have adopted the three-part test employed by the federal

[11]This statute states in pertinent part:
"It shall be unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his *compensation*, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" (Emphasis added.) 422 U.S.C. §2000e—2(a)(1) (2000).

[12]This statute provides in relevant part:
"No employer *** shall discriminate *** *between employees* on the basis of sex *by paying wages to employees *** at a rate less than the rate* at which he pays wages to employees of the opposite sex *** for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." (Emphasis added.) 29 U.S.C. §206(d)(1) (2000).

courts in actions for employment discrimination brought under title VII of the Civil Rights Act (42 U.S.C. §2000e *et seq.* (2000)), as articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677, 93 S. Ct. 1817, 1824 (1973).

Under this three-prong test, the petitioner must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179.[13] If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. *Zaderaka*, 131 Ill. 2d at 180. Second, to rebut the presumption, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Zaderaka*, 131 Ill. 2d at 180. Third, if the employer articulates such a reason, the plaintiff must prove, again by a preponderance of the evidence, that the employer's reason was untrue and was a pretext for discrimination. *Zaderaka*, 131 Ill. 2d at 180. Under this test, the ultimate burden of persuasion remains on the plaintiff throughout the proceedings. *Zaderaka*, 131 Ill. 2d at 180.

■ Unlike this test, however, the procedure used in analyzing actions under the Equal Pay Act (29 U.S.C. §206(d)(1) (2000)), which petitioner urges us to apply here on appeal, permits the shifting of the burden of proof to the employer. Under this test, if the petitioner establishes by a preponderance of the evidence that an employer is paying members of one sex more than members of the other sex for similar work, the burden immediately shifts to the employer to establish also by a preponderance of the evidence that the differential is based upon one of the following articulated factors: (1) a seniority system, (2) a merit system, (3) a system that measures wages by the quality or quantity of production, or (4) a system "based on any other factor other than sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195-96, 41 L. Ed. 2d 1, 10-11, 94 S. Ct. 2223, 2228-29 (1974).

Petitioner invites us to apply this standard in place of the three-part test used in evaluating actions under title VII of the Civil Rights Act (42 U.S.C. §2000e *et seq.* (2000)), contending that our supreme court's decision in *Zaderaka* is restricted to discriminatory hiring

---

[13]We note that to establish a *prima facie* case of employment discrimination, petitioner must show that (1) she is a member of a protected group; (2) that she performed her job satisfactorily; (3) that the employer took adverse action against her despite the adequacy of her work; and (4) that a similarly situated employee, who is not a member of the protected group, was not subjected to the same adverse action. *Anderson*, 334 Ill. App. 3d at 634, 778 N.E.2d at 262.

cases brought under the Human Rights Act (775 ILCS 5/2—102(A) (West 2004)), which are more analogous to title VII actions and for which the three-part test was developed. In support of her contention, petitioner cites to a line of Illinois appellate decisions preceding *Zaderaka*, which held that a charge of discrimination brought under the Human Rights Act (775 ILCS 5/2—102(A) (West 2004)) is akin to an action brought under the Equal Pay Act (29 U.S.C. §206(d)(1) (2000)).[14]

We, however, decline petitioner's invitation to apply this standard based on the decision of this appellate court in *Illinois State Board of Elections v. Human Rights Comm'n*, 291 Ill. App. 3d 185, 683 N.E.2d 1011 (1997), *appeal denied*, 175 Ill. 2d 528, 689 N.E.2d 1139 (1997), which extended *Zaderaka* to claims of unequal pay brought under the Human Rights Act (775 ILCS 5/2—102 (West 2004)). In that case, just as here, the parties disagreed as to which theory in regard to the allocation of burden of proof applied in an action brought under section 2—102(A) of the Human Rights Act (775 ILCS 5/2—102 (West 2004)), alleging unlawful gender-based discrimination based on unequal pay. The employer (the Illinois State Board of Elections) argued that the appropriate procedure is that used in proceedings under title VII of the Civil Rights Act (42 U.S.C. §2000e *et seq.* (1994)), while the employee and the Department of Human Rights both argued that the appropriate procedure was the one used in analyzing complaints under the Equal Pay Act (29 U.S.C. §206(d)(1) (1994)).

The appellate court in *Illinois State Board of Elections* found that the appropriate standard is the three-prong analysis used in title VII actions and adopted by our supreme court in *Zaderaka*, but held that under the specific facts of that case the failure of the Department of Human Rights to apply this standard constituted harmless error. *Illinois State Board of Elections*, 291 Ill. App. 3d at 193, 683 N.E.2d at 1016, citing *Zaderaka*, 131 Ill. 2d at 180. However, in his dissent, Justice Steigmann concurred with the opinion of the majority that the application of the Equal Pay Act standard instead of the three-part title VII test was done in error, but further dissented from the conclusion of the majority that any such error could have been harmless, finding that in fact, such error involving the erroneous application of burdens of proof could by no means be harmless. See *Illinois State Board of Elections*, 291 Ill. App. 3d at 196-97, 683 N.E.2d at 1018-19 (Steigmann, J., dissenting).

---

[14]See *Northtown Ford v. Human Rights Comm'n*, 171 Ill. App. 3d 479, 487, 525 N.E.2d 1215, 1221 (1988), and *McCullar v. Human Rights Comm'n*, 158 Ill. App. 3d 1011, 1020, 511 N.E.2d 1375, 1381 (1987).

■ In coming to its conclusion that the three-part test is appropriate to equal pay claims brought under the Human Rights Act (775 ILCS 5/2—102 (West 1994)), in reliance upon our supreme court's decision in *Zaderaka*, the court in *Illinois State Board of Elections* rejected the earlier decisions of the appellate courts, which analogized the Human Rights Act (775 ILCS 5/2—102 (West 1994)) to the Equal Pay Act (29 U.S.C. §206(d)(1) (1994)), stating:

"In cases brought under the [Illinois Human Rights] Act for discrimination in pay based on sex and where apparently no issue was raised as to the allocation of burden of proof, this court has followed the [Equal] Pay Act standard. See *Northtown Ford v. Human Rights Comm'n*, 171 Ill. App. 3d 479, 487, 525 N.E.2d 1215, 1221 (1988); see also *McCullar v. Human Rights Comm'n*, 158 Ill. App. 3d 1011, 1020, 511 N.E.2d 1375, 1381 (1987). *** However, subsequent to *Northtown Ford* and *McCullar*, in a case brought under the [Human Rights] Act concerning age discrimination in hiring, the Supreme Court of Illinois applied the title VII test for the allocation of burden of proof and held the Commission could properly determine that the employer's stated reason for not hiring the complainant there was not a pretext. The supreme court stated that the court would follow the 'framework' of title VII in deciding cases of employment discrimination under the [Human Rights] Act. [*Zaderaka*], 131 Ill. 2d [at] 178, 545 N.E.2d [at] 687 ***." *Illinois State Board of Elections*, 291 Ill. App. 3d at 192-93, 683 N.E.2d at 1016.

The court in *Illinois State Board of Elections* further reasoned:

"As *Zaderaka* was decided after *Northtown Ford* and *McCullar*, we deem that its rationale should be followed here. We see no valid reason why the burden on the employer should be greater in cases involving pay based on sex than in cases brought under the [Human Rights] Act for other types of discrimination. Under federal law, a different allocation of the burden of proof exists for [Equal] Pay Act cases than for those under title VII, but there, at least, different acts are involved, while under Illinois law all types of discrimination are covered by the [Human Rights] Act." *Illinois State Board of Elections*, 291 Ill. App. 3d at 193, 683 N.E.2d at 1016.

We are persuaded by this reasoning. There is no basis upon which to presume that our supreme court would impose two different standards of proof upon the same Act simply because one action involves discriminatory practices with respect to hiring and the other with respect to pay. Nor is there anything in the federal standards which would bind our supreme court to apply such different burdens of proof to a single statute.

Moreover, since the decision in *Illinois State Board of Elections*, other Illinois appellate courts have treated claims of discrimination based on disparate pay brought under the Human Rights Act (775 ILCS 5/101 *et seq.* (West 2004)) using the three-prong analysis applied in discrimination claims brought under title VII of the Civil Rights Act. See, *e.g.*, *Anderson v. Chief Legal Counsel*, 334 Ill. App. 3d 630, 634, 778 N.E.2d 258, 262 (2002); accord *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 316, 700 N.E.2d 1105, 1112 (1998) (clarifying that in determining whether there was a lack of substantial evidence so as to permit dismissal of a discrimination charge the Department of Human Rights must look to all three prongs of the test).

Consequently, under the aforementioned precedent, we are bound to reject petitioner's contention that the Department of Human Rights erred when it applied the three-prong analysis to the determination of the cause at bar. *Zaderaka*, 131 Ill. 2d at 180; *Illinois State Board of Elections*, 291 Ill. App. 3d at 193, 683 N.E.2d at 1016; *Anderson*, 334 Ill. App. 3d at 634, 778 N.E.2d at 262.

Petitioner contends, however that even if the proper standard was used by the Department of Human Rights, her charge should not have been dismissed where she presented sufficient evidence to establish a *prima facie* case of discrimination. We disagree.

■ As already noted above, under the three-step analysis adopted by *Zaderaka*, in order to avoid dismissal of her claim, petitioner first had the burden of establishing a *prima facie* case of employment discrimination. To do so here, petitioner had to show that (1) she was a member of a protected group; (2) that she performed her job satisfactorily; (3) that the employer took adverse action against her despite the adequacy of her work; and (4) that a similarly situated employee, who is not a member of the protected group, was not subjected to the same adverse action. *Anderson*, 334 Ill. App. 3d at 634-35, 778 N.E.2d at 262.

In the present case, the chief legal counsel agreed with the Department's determination that petitioner established a *prima facie* case in her charge of discrimination. Petitioner established that, as a woman, she is a member of a protected group. Notwithstanding some evidence to the contrary, petitioner sufficiently alleged that she performed her job for the IDCEO satisfactorily and that despite the adequacy of her work she was subjected to lower pay than two similarly situated male employees, Barry and Streicker, for work that required the same skills and effort.

Having established her *prima facie* case, the burden shifted to the IDCEO to articulate, but not prove, a reason for the disparate pay.

The IDCEO carried its burden of production by stating that petitioner and the two male comparatives (Barry and Streicker) were not similarly situated employees because the two men held different positions and were hired to perform different duties than those of petitioner, which required more skill and involved greater responsibility. The burden then shifted back to petitioner to prove that the IDCEO's reasons were a pretext for discrimination.

Petitioner contended that the IDCEO's reason was a pretext for discrimination because she in fact performed the same duties as Barry and Streicker and was far more experienced than they were. Specifically petitioner contended that her first duty after Barry and Streicker were hired was to train them. Moreover, once Barry and Streicker were hired and the IDCEO reorganized to permit one attorney to head a bureau, petitioner was given first pick of bureaus because of her seniority. Petitioner failed to prove, however, how her training of the new male employees and her first pick of bureaus was connected to her level of compensation. See *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 725 (5th Cir. 1970) ("[J]obs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential").

In fact, the Department's investigation revealed that Barry and Streicker were both hired as SPSAs, a position supervisory to that of petitioner, and one that required far more skill and responsibility than the position held by petitioner. Specifically, the job descriptions for a PSA established that the PSA's duties included, *inter alia*, (1) providing advice and recommendations with respect to collection of business development loans, confidential negotiation of workout and settlement agreements, and bankruptcy negotiations; (2) providing legal advice with respect to the [IDCEO's] collection policies; (3) drafting and negotiating conditions and terms of loan agreements; (4) performing confidential work for senior management relating to internal programs and activities, issuing opinions with respect to conflict of interest questions, statutory interpretation, and pending legislation; and (5) acting as a hearing officer for departmental representatives in administrative hearings and appeals brought pursuant to the Illinois Administrative Procedure Act, departmental rules or federal regulations. On the other hand, the job description for an SPSA revealed that the SPSA was responsible for, *inter alia*, (1) supervising subordinate staff (including PSAs), in the assignment of duties and litigation, by planning, assigning, prioritizing, coordinating evaluating,

reviewing and maintaining records of performance of subordinates and providing appropriate training, technical assistance and coaching for subordinates; (2) approving time off, promotions, demotions disciplinary actions, and attempts to resolve grievances for all subordinate staff; (3) counseling the agency director, deputy directors and division managers on legal issues, policies and procedures and matters affecting operations of the IDCEO's programs (such as drafting, revising, amending and reviewing complex commercial agreements, including, *e.g.*, loans, royalty and equity agreements; formulating procedures by directing and reviewing legal research on federal and state laws, and proposed legislation, that affect state and federally funded programs administered by the IDCEO); and (4) acting as the primary hearing officer for the IDCEO and representing the agency before the Department of Human Rights in fact-finding conferences.

Moreover, in her interview with the Department's investigator, Jiganti stated and petitioner offered no proof to rebut the contention that Streicker was specifically hired by the IDCEO to create and run the Grant Funds Recovery Program, which included putting procedures in place to establish a formal hearing process, as well as to head the Base Realignment and Closure Commission project, which involved evaluating candidates, drafting contracts, and working with consultants to organize a publicity launch of the program.

More overridingly, the Department's investigation revealed that in setting the salaries for petitioner, Streicker and Barry, the IDCEO adhered to the CMS pay plan which set the pay scale for SPSAs between $49,560 and $116,460, and the PSA scale between $35,952 and $78,696, as well as section 310.490 of title 80 of the Illinois Administrative Code (80 Ill. Adm. Code §310.490, amended at 20 Ill. Reg. 15018, eff. November 7, 1996), which permits the employer to give an incoming employee a salary increase up to 10% of the employee's last prior salary. The investigation revealed that Streicker, Barry, and petitioner were all hired at salaries within the pay scale permitted by CMS for the positions for which they were employed.[15] The Department's investigation also revealed that of the three employees, petitioner had received the greatest percentage increase in

[15]In that respect, we note that any argument raised by petitioner—both before the Department of Human Rights and again here on appeal—that an employee's prior salary history and an agency's compliance with the CMS pay plan (permitting a 10% increase in starting salary) are inappropriate considerations because of historic disparities in pay for men and women has been outright rejected in authority which she herself cites. See *Wernsing v. Department of Human Services*, 427 F.3d 466, 467, 469-70 (7th Cir. 2005).

her salary when first hired by the IDCEO (*i.e.*, petitioner received a salary increase of 10.53%, which was in excess of the 10% maximum salary increase permitted under the Administrative Code, while both Streicker and Barry accepted substantial pay cuts when employed by the IDCEO).

Moreover, the Department's investigation revealed that there was no evidence of sex animus, because a female SPSA, Kathleen Bruns, who would have been more similarly situated to the male comparatives Barry and Streicker, had been paid more than both men.

■ Consequently, under the three-part test in *Zaderaka*, petitioner did not satisfy her burden to establish that the reasons given by the IDCEO to explain the differential in her pay was pretextual. Therefore, the Department's chief legal counsel did not abuse her discretion by sustaining the Department's dismissal of petitioner's charge of sex discrimination based on disparate pay. See *Anderson*, 334 Ill. App. 3d at 634, 778 N.E.2d at 262 (holding that the chief legal counsel did not abuse his discretion in affirming the Department of Human Right's dismissal of a female petitioner's charge of sex discrimination based on disparate pay, where the record established that employer's reasons for the pay differential, *i.e.*, that the female petitioner and the male employee with the same job title had substantially dissimilar experiences, duties, and responsibilities, constituted a legitimate, nondiscriminatory reason for the disparity).

Petitioner nevertheless asserts that the chief legal counsel's decision was made in error because it was based on credibility determinations made by the chief legal counsel in violation of the Seventh Circuit's decision in *Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999). In *Cooper*, 196 F.3d at 814-15, plaintiffs filed a class action suit asserting a due process challenge to the then-new amendments to the Illinois Human Rights Act (775 ILCS 5/2—101 *et seq.* (West 1996)), which permitted the Department of Human Rights to make credibility determinations at the investigatory stage of the proceedings. *Cooper*, 196 F.3d at 814. The district court had entered an injunction against the Department of Human Rights prohibiting it from making credibility determinations in the course of its investigation, and the Seventh Circuit upheld the injunction. *Cooper*, 196 F.3d at 814-15. In doing so, the Seventh Circuit made clear that it did not make any determinations as to whether the procedures of the Department of Human Rights violated due process, but simply found that because it was not clear whether the Department had a purely investigatory or mixed investigatory-adjudicatory function, there were concerns regarding due process that vitiated a preliminary injunction. *Cooper*, 196 F.3d at 15.

In the present case, citing to *Cooper*, petitioner asserts that in lieu of the documents she submitted to the Department of Human Rights, namely, the briefs and opinion rendered by the IDOL in her separate claim before that agency asserting a violation of the Illinois Pay Act, wherein the IDOL determined that petitioner's job was interchangeable with that of Streicker and Barry, the chief legal counsel could not have determined that petitioner, Barry and Streicker were not similarly situated. The IDCEO responds that the decision of the chief legal counsel did not rest on any credibility determinations but was rather borne out by the documentation submitted to the Department by the parties. We agree.

The record below reveals that there was ample documentation presented by the IDCEO which unequivocally established that (1) as part of their job descriptions, PSAs and SPSAs were required to perform different duties, which required varying levels of skill and experience, and (2) that the salary determinations at the IDCEO were made according to a CMS pay plan. Petitioner offered no evidence to contradict the job descriptions, apart from her own general characterizations of the legal work she performed, and the attached decision of the IDOL, which indicated that the work performed by petitioner and the two men was comparable. Petitioner, however, herself, conceded that the IDOL decision that she relied on was subsequently overturned by a later decision of that agency. In any event, as the chief legal counsel correctly noted, although the decision of the IDOL was reviewed by the Department, it was in no way binding on the Department's decision as the two agencies are governed by different statutes, with different burdens of proof, and a decision made by the IDOL has no bearing on the outcome of the Department's own investigation. Accord *Illinois State Board of Elections*, 291 Ill. App. 3d at 192-94, 704 N.E.2d at 805.

Moreover, as already noted above, the decision of the chief legal counsel that there was no substantial evidence of gender-based animus in the IDCEO's action was predicated predominantly on the voluminous salary records of all the employees working for the IDCEO in the relevant time period, which revealed, *inter alia*: (1) that Barry, Streicker and petitioner were all paid salaries which fell within the CMS pay plan requirements for the particular position that each employee held within the IDCEO; (2) that Kathleen Bruns, an SPSA, was paid more than either male SPSA Streicker and Barry; and (3) that upon initial employment, petitioner had been given a greater percent increase in her salary than any other employee in the IDCEO. Consequently, there is nothing in the record to suggest that the chief legal counsel or the Department of Human Rights made credibility determinations in the investigative proceedings.

■ Petitioner finally takes issue with the amount of time that elapsed between the remand orders entered by the chief legal counsel and the subsequent investigation addendum reports issued by the Department of Human Rights. Specifically, petitioner contends that the Department's final addendum report was improper because it was "rushed," *i.e.*, made "hurriedly and summarily" only four days after the chief legal counsel's second reversal of the Department's dismissal, and without any further investigation. Petitioner speculates that the reason why the last addendum was entered so quickly was the fact that the Department of Human Right's allowable 365-day period in which an investigation must be completed was about to elapse the following day, which would have permitted petitioner the right to bring her case before the Human Rights Commission.

We first note, however, that contrary to petitioner's assertion, our review on appeal is limited to reviewing "the [c]hief [l]egal [c]ounsel's decision, not the decision of the Department of Human Rights." (Emphasis omitted.) *Deen*, 337 Ill. App. 3d at 302, 785 N.E.2d at 529; see also *Kalush v. Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 989 n.4, 700 N.E.2d 132, 139 n.4 (1998) ("we review only the determination of the chief legal counsel. See 775 ILCS 5/7—101.1(A), 8—111(A)(1) (West 1996); *Traficano v. Department of Human Rights*, 297 Ill. App. 3d 435, 697 N.E.2d 372 (1998); *Parham v. Macomb Unit School District No. 185*, 231 Ill. App. 3d 764, 596 N.E.2d 1192 (1992). It is the chief legal counsel who determines the sufficiency of the Department's investigation. See *Gayle v. Human Rights Comm'n*, 218 Ill. App. 3d 109, 578 N.E.2d 144 (1991) (discussing power of Human Rights Commission to review sufficiency of Department's investigation under section 8—103 (775 ILCS 5/8—103 (West 1994)), a power now delegated to the chief legal counsel under section 7—101.1 (775 ILCS 5/7—101.1 (West 1996)))").

In any event, we note that the record reveals that petitioner's charge remained pending before the Department of Human Rights for two years and eight months, during which her claims were subject to an initial investigation, and two addendums to that investigation following remands from the chief legal counsel. Moreover, the record reveals that in her affidavit attached to the last request for review by the chief legal counsel, petitioner admitted that after the chief legal counsel's final remand for further investigation, she refused the Department's request to extend the investigation period. Although petitioner's affidavit also states that during that time, she had indicated to the Department's investigator that she was "ready, willing and able to meet with [the investigator] and/or provide any information that would allow [the investigator] to complete the

investigation as defined by the chief legal counsel in the remand order," petitioner nowhere in her request for review, or here on appeal states that she actually had additional evidence to provide to the investigator during any of the remands. Petitioner nowhere identifies a single piece of additional evidence she wished to present during the remand investigations, or that she offered particular additional evidence that was not accepted by the investigator. As such, petitioner's contention must fail. See *Parham*, 231 Ill. App. 3d at 771, 569 N.E.2d at 1197 ("inferences of fact based on imagination, speculation, and conjecture cannot stand as a matter of law"); see also *Kalush*, 298 Ill. App. 3d at 995, 700 N.E.2d at 142 (same).

## III. CONCLUSION

For the foregoing reasons, the order of chief legal counsel of the Department of Human Rights dismissing petitioner's charge is affirmed.

Affirmed.

CAHILL and McBRIDE, JJ., concur.