2019 IL App (1st) 182348

SIXTH DIVISION
June 14, 2019

No. 1-18-2348

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LISA J. GILLARD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | No. 16 L 9575 |
| PRENTICE HOSPITAL, STARBUCKS CORPORATION, | ) | |
| UNIVERSAL PROTECTIONS SERVICES, FRESH | ) | |
| MARKET CAFÉ, d/b/a Morrison's, and PREMIER | ) | |
| SECURITY CORPORATION, | ) | Honorable |
| | ) | Clare Elizabeth McWilliams |
| | ) | and Irwin Solganick, |
| Defendants-Appellees. | ) | Judges Presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a tort action brought by plaintiff, Lisa J. Gillard, against

defendants, Northwestern Memorial Hospital, Prentice Hospital, Starbucks Corporation

(Starbucks), and Universal Protection Services, Fresh Market Café, d/b/a/ Morrison's, and

Premier Security Corporation (Premier Security).[1] Gillard appeals the circuit court's dismissal of

her fourth amended complaint and the denial of two motions to reinstate the case. With the

_____

[1] According to their briefs, the last two defendants are actually named Morrison Management
Specialists, Inc., and Premier Security, LLC.

exception of Starbucks, all of the defendants have moved for sanctions, arguing that this appeal is frivolous and that Gillard has engaged in an egregious pattern of meritless serial litigation. We affirm the orders of the circuit court and grant the motions for sanctions.

¶ 2                                    I. BACKGROUND

¶ 3    On September 26, 2016, Gillard shoved a security guard at Northwestern Memorial Hospital. The legal ramifications of this altercation are difficult to overstate. That event set off a series of lawsuits resulting in at least 10 criminal and civil appeals before this court.[2] So although the issues in this appeal are relatively simple and straightforward, we cannot properly address them without a review of Gillard's litigation over the last few years.

¶ 4                                    A. This Case

¶ 5    This is Gillard's second civil lawsuit against the very same defendants. In the first case, she alleged that the defendants "harassed, aggressively stalked, and incited with fear of violence to harm and injure her person and profession" during various visits to the facilities at Northwestern Memorial Hospital and Prentice Hospital.[3]

¶ 6    While that case was pending, Gillard continued to frequent the hospitals' facilities. September 26, 2016, was one such occasion. That evening, a security guard asked Gillard to leave after she verbally abused one of his coworkers. An altercation ensued, and Gillard shoved the security guard in the chest. In response, security personnel issued a written notice that Gillard was considered a trespasser and that she was not welcome on hospital property. The notice stated: "If you violate this notice you will be arrested and prosecuted to the fullest extent of the

---

[2] Today we are also entering orders on several other appeals by Gillard, most of which can be traced in part to the events of September 26, 2018: *Gillard v. Caradang*, 2019 IL App (1st) 181793-U, *Gillard v. McWilliams*, 2019 IL App (1st) 182217-U, *Gillard v. Panera, LLC*, 2019 IL App (1st) 182520-U, and *Gillard v. Dart*, 2019 IL App (1st) 182521-U.

[3] The circuit court dismissed that case with prejudice. The circuit court also denied Gillard's motion to amend her complaint after the dismissal, and this court affirmed. *Gillard v. Northwestern Memorial Hospital*, 2018 IL App (1st) 180922-U.

law. You will receive no further warning. Do not enter the land or building of Northwestern Memorial Hospital." Security personnel also called the police. Officers of the Chicago Police Department responded to the call and arrested Gillard for criminal battery.

¶ 7    Gillard filed this case two days after her arrest. She filed a *pro se* complaint against the defendants, seeking $300 million dollars in damages for defamation and intentional infliction of emotional distress. She alleged that the defendants issued the written trespass notice and had her arrested in retaliation for bringing the earlier lawsuit. She also alleged that the trespass notice was a libelous publication and that defendants' claims that she committed a criminal battery on a security guard were "false and defamatory." Gillard attached a copy of the written trespass notice as an exhibit to her complaint.

¶ 8    Before any of the defendants answered the initial complaint, Gillard filed an amended complaint. The amended complaint was substantially similar to the original complaint but only claimed defamation *per se*. Gillard then filed a motion for leave to file a second amended complaint, which the circuit court granted. Gillard's second amended complaint restored a claim for intentional infliction of emotional distress.

¶ 9    The defendants moved to consolidate this case with Gillard's earlier case against them. Gillard opposed consolidation on the grounds that the first lawsuit was already proceeding apace, and that consolidation would allow the defendants to avoid existing deadlines in that case. She also argued that although the parties in each case were the same, the underlying facts, causes of action, and injuries were different. The circuit court denied the motion to consolidate.

¶ 10    Rather than answer the second amended complaint, the defendants variously moved to dismiss it under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)). They argued, *inter alia*, that the trespass notice did not contain any

false statement and that the complaint did not allege sufficient facts identifying the sort of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress count. Certain defendants also argued that the second amended complaint did not contain any specific allegations related to *their* conduct.

¶ 11    The case was briefly dismissed for want of prosecution, but that dismissal was vacated on Gillard's motion. With the case back on the docket, the court granted the motions to dismiss without prejudice and gave Gillard leave to file a third amended complaint. Gillard's third amended complaint repleaded the counts for defamation *per se* and intentional infliction of emotional distress and added new claims for negligent infliction of emotional distress and false light. Gillard also increased her monetary demand to $500 million.

¶ 12    Again, the defendants individually filed motions under sections 2-615 and 2-619 of the Code. Gillard failed to appear on a series of court dates, and the court dismissed the case for want of prosecution for a second time. Again, Gillard moved to vacate the dismissal, and again the court reinstated the case.

¶ 13    Before the motions to dismiss could be heard, Gillard moved for substitution of judge as of right and for cause. Another judge heard and denied the motion for substitution. Nevertheless, the assigned judge then recused himself from all cases involving Gillard.

¶ 14    The case was reassigned to a different judge in the law division. Once again, Gillard moved for substitution of judge before the motions to dismiss could be heard. And again, the motion to substitute was denied, but the assigned judge recused herself from all cases involving Gillard.

¶ 15    Around this time, Gillard filed a tort complaint against several Cook County sheriff's officers assigned to duty on the twenty-second floor of the Daley Center. Consequently, all of the

law division motion call judges recused themselves from all of Gillard's pending cases. Her cases, including this one, were all assigned to Judge Clare Elizabeth McWilliams.

¶ 16    The court heard oral argument on the pending motions to dismiss and entered an order granting the motions without prejudice. The court granted leave for Gillard to file a fourth amended complaint, which is the version at issue here.

¶ 17    Gillard's fourth amended complaint sought $3 billion in damages and the termination of several of defendants' employees. Gillard pleaded claims for defamation *per se* (counts I and II), intentional infliction of emotional distress (count III), negligent infliction of emotional distress (count IV), and false light (count V).

¶ 18    By the time Gillard filed the fourth amended complaint, her criminal case had concluded. After a bench trial, Gillard was convicted of criminal battery and sentenced to one year of court supervision and ordered not to have any contact with Northwestern Memorial Hospital except in the case of medical emergency. *People v. Gillard*, 2018 IL App (1st) 171121-U, ¶ 1 (*Gillard I*).

¶ 19    The defendants again moved to dismiss the case on section 2-615 and section 2-619 grounds. They argued, among other things, that Gillard's conviction for battery established conclusively that any statements the defendants had made about Gillard shoving a security guard were not false. They also argued that the fourth amended complaint, like the previous complaints, did not plead adequate facts to support any of her claims. The court set a briefing schedule on the motions to dismiss, ordering Gillard to file her response brief on or before September 11, 2018.

¶ 20    Importantly to our ultimate disposition of this appeal, Gillard did not respond to the motions to dismiss. Rather, she filed a motion to substitute Judge McWilliams for cause. She alleged that Judge McWilliams "is a part of 'ring of conspiracy' by judges, conspiring to deprive

Ms. Gillard of her life and liberty rights as well as her individual and constitutional rights under the law." Another judge heard and denied the motion for substitution.

¶ 21    Undaunted, Gillard filed a civil complaint against Judge McWilliams, alleging civil rights violations and civil conspiracy. *Gillard v. McWilliams*, 2019 IL App (1st) 182217-U, ¶ 5. Gillard used the lawsuit against Judge McWilliams as the basis for several additional "emergency motions" to have the case reassigned. She alleged that her pending lawsuit required Judge McWilliams to recuse herself pursuant to Rule 63(C)(1) (Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017)). She also alleged that "[Judge] McWilliams is 'mentally ill,' thereby, 'mentally unfit' to serve in any capacity of the judiciary in Cook County or any another jurisdiction in North America or abroad."

¶ 22    Meanwhile, in response to the increasingly irregular and hostile proceedings, Northwestern Memorial Hospital moved the court to enter a protocol order. The court granted the motion and entered an order that barred the parties from noticing motions for dates other than regularly scheduled case management conferences, required Gillard to obtain leave of court to file any documents, required all parties and counsel to "treat one another civilly and with respect," and expressed "zero tolerance for threats or physical intimidation." The order also dictated that "[t]he drafter [of any future court order] will hand the order to the court clerk or law clerk, who in turn will hand the order to the opposing party or attorneys, within the confines of the courtroom, in order to review the substance of the order."

¶ 23    Gillard responded to the entry of the protocol order by sending a "memorandum" to the presiding judge of the law division, threatening to initiate Attorney Registration and Disciplinary Commission complaints and "federal indictment charges" against opposing counsel and several Cook County judges. She also threatened that unless Judge McWilliams was removed from

Gillard's cases, the presiding judge would also be included in the federal charges. Gillard then resumed her practice of filing "emergency motions" to disqualify Judge McWilliams and noticing those motions for presentment before the presiding judge of the law division. These motions were all denied or stricken.

¶ 24    In a written order dated October 23, 2018, the circuit court granted the defendants' motions to dismiss the fourth amended complaint. The court found that Gillard had not pleaded sufficient facts support any of her claims, stating, "Plaintiff's Fourth Amended Complaint is conclusory and lacks the specificity or relevant facts essential to satisfy the elements of each articulated claim." The court also dismissed the complaint as to Universal Protection Services on the ground that Universal Protection Services was no longer the security contractor at Northwestern Memorial Hospital by the date of the underlying occurrence. The court dismissed the case with prejudice.

¶ 25    The very same day, Gillard filed a motion to reinstate the case and noticed the motion for presentment before the presiding judge of the law division. Two days later, she filed another motion to reinstate the case. In both motions, Gillard incorrectly stated that the case had been dismissed for want of prosecution. She also alleged that Judge McWilliams was "disqualified under the law." She alleged that, pursuant to Rule 63(C)(1), her lawsuit against Judge McWilliams disqualified Judge McWilliams from presiding over any of her cases. Neither motion argued that Gillard had sufficiently pleaded the five counts of her fourth amended complaint or otherwise addressed the court's rulings on the motion to dismiss. On November 1, 2019, Judge Irwin Solganick, sitting in the place of the presiding judge of the law division, denied the motions to reinstate. This appeal followed.

¶ 26                                B. Related Cases

¶ 27    This appeal is neither the first nor the last to arise from the September 26, 2016, shoving incident. In April 2018, this court affirmed Gillard's conviction for criminal battery of the Northwestern Memorial Hospital security guard. *Gillard I*, 2018 IL App (1st) 171121-U. That conviction itself led to a complex series of related cases.

¶ 28    To prosecute that appeal, Gillard needed the transcripts from the bench trial. Nanette Comeaux-Brookins, a court reporter supervisor, assisted Gillard in obtaining those transcripts. After receiving the transcripts, Gillard made dozens of telephone calls to Comeaux-Brookins's office, and left a score of voicemail messages for her. Consequently, Comeaux-Brookins petitioned for a stalking no contact order against Gillard. Gillard failed to appear, and the circuit court entered a default order, prohibiting Gillard from having any contact with Comeaux-Brookins. Gillard filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2016)), seeking to vacate the default order. The circuit court denied her petition, and she appealed. This court dismissed that appeal for failure to serve copies of her notice of appeal, docketing statement, and brief upon Comeaux-Brookins. *Brookins v. Gillard*, No. 1-17-2455 (2018) (unpublished summary order under Illinois Supreme Court Rule 23).

¶ 29    Gillard continued to make telephone calls to Comeaux-Brookins after the entry of the no contact order. As a result, the circuit court issued a warrant for Gillard's arrest. On September 17, 2017, Cook County sheriff's officers arrested Gillard at the Daley Center courthouse, where she was present for status hearings on her various civil lawsuits. Gillard was tried and convicted of harassment by telephone (720 ILCS 5/26.5-2 (West 2014)) and sentenced to 10 days' imprisonment. This court dismissed Gillard's appeal from that conviction because her briefs did not comply with various Illinois Supreme Court rules. *People v. Gillard*, 2018 IL App (1st) 173036-U, ¶¶ 2, 19 (*Gillard II*).

¶ 30    After her arrest for harassment, Gillard sued the Cook County sheriff's officers who arrested her. She also sued the president of the Cook County Board of Commissioners. Gillard accused the officers of, among other things, battery, excessive force, and attempted murder. The circuit court dismissed that case, and Gillard appealed. In a separate order issued today, we dismissed that appeal because Gillard's brief violated Illinois Supreme Court Rule 341 (eff. May 25, 2018) in several ways and did not contain an argument directed at the order appealed. *Gillard v. Caradang*, 2019 IL App (1st) 181793-U.

¶ 31    Gillard also sued the Cook County Sheriff, alleging that Cook County Sheriff's officers had stalked and detained her at the Daley Center courthouse on a separate occasion. In that case—also before Judge McWilliams—Gillard refused to participate and the case was dismissed for want of prosecution. The circuit court then denied a motion to reinstate the case. Gillard filed an appeal in that case as well. However, her notice of appeal was defective, so we dismissed that appeal for lack of jurisdiction in a separate order issued today. *Gillard v. Dart*, 2019 IL App (1st) 182521-U.

¶ 32    Gillard also sued Comeaux-Brookins and Judge Clarence Burch—who had presided over her criminal battery trial—alleging that their defamatory statements had led to her arrest for harassment. Both of those cases were dismissed by the circuit court. Gillard has appealed both dismissals, and those appeals were consolidated under case No. 1-18-1792. Those consolidated appeals remain pending before this court.

¶ 33    Gillard's case against Judge McWilliams, which served as the basis for several of Gillard's motions to remove Judge McWilliams from this case, was also dismissed by the circuit court. Gillard appealed that dismissal as well. We dismissed that appeal for lack of jurisdiction in a separate order issued today. *McWilliams*, 2019 IL App (1st) 182217-U.

¶ 34                            C. Unrelated Cases

¶ 35    Aside from those cases directly or indirectly resulting from the September 26, 2016, altercation with Northwestern Memorial Hospital security guards, Gillard has conducted a prodigious amount of *pro se* litigation related to alleged racial, age, gender, disability, and religious discrimination. As noted above, Gillard previously sued these very same defendants for discrimination. *Gillard v. Northwestern Memorial Hospital*, 2018 IL App (1st) 180922-U.

¶ 36    She has also sued Panera, LLC, based on similar allegations. Judge McWilliams also presided over that case. The circuit court dismissed that case for want of prosecution, denied motions to reinstate the case, and denied a petition under section 2-1401 of the Code. Gillard appealed. The notice of appeal was defective, and we dismissed that appeal for lack of jurisdiction in a separate order entered today. *Gillard v. Panera, LLC*, 2019 IL App (1st) 182520-U.

¶ 37    Gillard has also pursued discrimination suits against a number of entities and organizations in various courts across the country. We take judicial notice that she has unsuccessfully sued Harold Washington College (*Gillard v. Board of Trustees of Community College District No. 508*, 393 F. App'x 399, 401 (7th Cir. 2010); *Gillard v. Board of Trustees of Community College District No. 508*, 2018 IL App (1st) 171083-U, ¶ 21); Northwestern University (*Gillard v. Northwestern University*, 366 F. App'x 686, 687 (7th Cir. 2010)); Southern New England School of Law (*Gillard v. Southern New England School of Law*, 563 U.S. 1030 (2011)); and Harvard College (*Gillard v. United States District Court for the District of Massachusetts*, No. 16-10750-DJC, 2016 WL 8716220, at *2 (D. Mass. July 22, 2016)). In the *Southern New England School of Law* case, the Supreme Court of the United States issued an order stating:

"As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and the petition is submitted in compliance with Rule 33.1." *Southern New England School of Law*, 563 U.S. 1030.

¶ 38                                        II. ANALYSIS

¶ 39    Before this appeal was fully briefed, Premier Security filed a motion to dismiss the appeal as frivolous and for sanctions pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). The other defendants, with the exception of Starbucks, joined and supplemented Premier Security's motion. Gillard responded, arguing *inter alia* that the opening motion was a "waste of ink" and was itself unconstitutional. We took the motions with the case. Consequently, our analysis has two parts: (1) whether Gillard can prevail on her claims of error and (2) whether her appeal is so frivolous, and her pattern of behavior so egregious, that we should enter an order of sanctions against her.

¶ 40                          A. Gillard's Claims of Error

¶ 41    At the outset, we note that there is some confusion about the scope of this appeal. Rule 303(b)(2) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). The filing of a notice of appeal is "the jurisdictional step which initiates appellate review." (Internal quotation marks omitted.) *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). "Unless there is a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is obliged to dismiss the appeal." *Id.* "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *Id.* An unspecified order is reviewable only where it is a step in the

"procedural progression" leading to the judgment specified in the notice of appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979). Clerical errors in a notice of appeal do not necessarily render the notice defective. See *People v. Bennett*, 144 Ill. App. 3d 184, 185 (1986) (excusing incorrect case number on *pro se* notice of appeal because the proper case was identified in the body of the notice); *In re Marriage of Ramsey*, 339 Ill. App. 3d 752, 755-56 (2003) (excusing incorrect date of order being appealed because the correct date appeared elsewhere on the notice).

¶ 42    Gillard's notice of appeal specifies a November 1, 2018, order entered by Judge McWilliams. However, the November 1, 2018, order was entered by Judge Solganick, not Judge McWilliams. That order denied Gillard's motions to reinstate the case. The last order entered by Judge McWilliams was the dismissal order.

¶ 43    "[N]otices of appeal should be liberally construed." *Burtell*, 76 Ill. 2d at 435. Notwithstanding the fact that the incorrect judge is listed on the notice of appeal, we hold that the notice was sufficient to grant jurisdiction to review the order entered by the circuit court on November 1, 2018. We also have jurisdiction over the October 23, 2018, dismissal order entered by Judge McWilliams because the dismissal was a necessary step in the procedural progression leading to the November 1 order. See *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 689 (1994) (holding that the trial court's ultimate judgment is subsumed into the court's ruling on a subsequent motion to reconsider).

¶ 44    Aside from the problems with the notice of appeal, the defendants present at least four meritorious arguments for why this appeal should be dismissed or the circuit court should be affirmed. These arguments include Illinois Supreme Court rules violations, waiver of issues at the circuit court level, forfeiture of issues on appeal, and the simple fact that the circuit court did

not err in dismissing Gillard's fourth amended complaint or denying her motions to reinstate the case.

¶ 45    First, Gillard's briefs are deficient in several respects. A *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants. *People v. Adams*, 318 Ill. App. 3d 539, 542 (2001). Where a party fails to comply with these procedural rules we may, in our discretion, strike the brief and dismiss the appeal. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12 (citing *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77).

¶ 46    Gillard has filed a brief in this court that violates Illinois Supreme Court Rule 341 (eff. May 25, 2018) in numerous ways. The statement of facts, consisting of a single page, contains no references to the pages of the record indicating where pleadings and orders are located. The statement of facts addresses one of the main issues in the case—the defendants' motions to dismiss—in a most cursory manner, omitting any description of the motions or the court's rationale for granting them.

¶ 47    Like the statement of facts, the argument section contains not a single citation to the record. More important, though, is the brief's lack of substantive content. It consists largely of snippets of legal text taken completely out of context. For example, Gillard discusses the jurisdiction of the Illinois Supreme Court, and the standards a court applies when considering whether a statute is unconstitutional. Obviously, this case is not currently before our supreme court and does not involve any challenge to a statute's constitutionality. The argument contains no argument actually directed at the circuit court's rationale, such as why the court erred in finding that her fourth amended complaint did not adequately plead any cause of action.

¶ 48    For all of the above reasons, we would be well within our discretion to strike Gillard's briefs and dismiss the appeal. But even in the face of deficient briefs, our jurisdiction over a *pro se* appeal may still be exercised where "we understand the issue plaintiff intends to raise and especially where the court has the benefit of a cogent brief of the other party." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). The defendants have very competently briefed the various possible issues. We, in our discretion, have chosen not to strike Gillard's briefs in this case, and we will address her appeal on the merits.

¶ 49    Second, looking beyond the formal defects of Gillard's brief, the arguments that she makes are waived. "Issues raised for the first time on appeal are waived." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 161 (1999). As to the court's denial of her motions to reinstate the case, Gillard raises a number of due process arguments that were not part of those motions. She supports her due process claims with citations to a wide range of irrelevant law on topics such as statutory interpretation and the Defense of Marriage Act (1 U.S.C. § 7 (2012)). Because Gillard did not raise any due process arguments in her motions to reinstate, she has waived those arguments.

¶ 50    Likewise, although the circuit court set a briefing schedule on the defendants' motions to dismiss the fourth amended complaint, Gillard did not file any response. Instead, she peppered the court with a series of unsuccessful "emergency" motions for substitution of judge. On appeal, Gillard argues that the defendants were both the actual and legal cause of her prosecution for battery. These arguments are both irrelevant and waived. They are irrelevant because the circuit court did not dismiss her fourth amended complaint on causation grounds; it dismissed the complaint because Gillard failed to plead sufficient facts related to a number of essential elements of her claims. And the arguments are waived because Gillard did not raise *any*

argument before the circuit court against the motions to dismiss, let alone these causation arguments. Gillard's causation arguments are also waived.

¶ 51    Third, on appeal, Gillard has forfeited all of the arguments that she actually *did* raise before the circuit court. Points that an appellant fails to raise in her opening brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Although Illinois Supreme Court Rule 63 (eff. Feb. 2, 2017) formed the basis for her motions to reinstate, Gillard's opening brief makes absolutely no mention of that rule. By the time she raised Rule 63 arguments in her reply brief, the issue was already forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief ***."). Likewise, she makes no reference to *any* of the five claims actually pleaded in her fourth amended complaint. Rather, she makes arguments related to causes of action that she never pleaded, such as malicious prosecution and consumer fraud. By not raising Rule 63 or the sufficiency of her pleadings in her opening brief, she has forfeited those arguments.

¶ 52    Fourth, even looking beyond the questionable notice of appeal, the deficient briefs, the waiver of issues before the circuit court, and the forfeiture of issues on appeal, we would find that the circuit court did not err. The court properly denied the motions to reinstate because Rule 63 is not an appropriate mechanism to obtain a substation of judge after an adverse ruling. The court also properly dismissed the fourth amended complaint with prejudice because Gillard had repeatedly failed to plead adequate facts to support her claims.

¶ 53    As to the motions to reinstate, Gillard incorrectly argued that the case had been dismissed for want of prosecution. Consequently, most of her argument in that motion was simply inapplicable to the circumstances. However, she also argued that the dismissal order was

inappropriate because her pending lawsuit against Judge McWilliams created an irreconcilable conflict under Rule 63. That argument is worth addressing.

¶ 54    Rule 63 states that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where *** the judge has a personal bias or prejudice concerning a party." Ill. S. Ct. R. 63(C)(1)(a) (eff. Feb. 2, 2017). "Whether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code." (Emphasis in original.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. "The Judicial Code, which is a part of our rules, says nothing that would give the impression that its provisions could be used by a party or his lawyer as a means to force a judge to recuse himself, once the judge does not do so on his own." *Id.* The proper method for seeking substitution of a judge in a civil case is governed solely by statute. *Id.* ¶ 26.

¶ 55    Although Rule 63(C) provides an extensive list of circumstances requiring judicial self-disqualification, none of those reasons exist here. See *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 568-69 (1991). In *Hartian*, a litigant filed a complaint with the Judicial Inquiry Board against the judge presiding over his divorce case. *Id.* at 569. On appeal, he argued that the Judicial Inquiry Board complaint was an extrajudicial source of actual prejudice and that, consequently, the judge should have recused himself. *Id.* This court held that allowing litigants to force a recusal by filing a complaint against the trial judge "would create a dangerous precedent whereby those seeking venue changes need only file charges with the Judicial Inquiry Board to achieve that purpose." *Id.*; see also *People v. Smeathers*, 297 Ill. App. 3d 711, 716 (1998) ("We believe that the respondent himself, in filing a complaint with the Judicial Inquiry Board ***, was directly responsible for creating any alleged prejudice.").

¶ 56    Like the litigant in *Hartian*, Gillard is mistaken in her belief that Rule 63 provided a mechanism by which she could force a recusal. Section 2-1001 of the Code allows a litigant to petition for a substitution of judge for cause. 735 ILCS 5/2-1001(a)(3)(ii) (West 2016). Gillard filed many such petitions, which were heard and denied by judges other than Judge McWilliams. Gillard has not appealed the denial of those petitions. Her motion to reinstate the case and to force Judge McWilliams's recusal based on Rule 63 was an inappropriate attempt to circumvent those orders.

¶ 57    Additionally, even if she had appealed the denial of her section 2-1001 petitions, we would have affirmed. Like the litigants in *Hartian* and *Smeathers*, it was Gillard herself who created the alleged prejudice on which she based her petitions. In *Hartian* and *Smeathers*, the alleged sources of prejudice were complaints before the Judicial Inquiry Board; in this case, it is Gillard's civil lawsuit against Judge McWilliams. To allow such a tactic would thwart the administration of justice and encourage the filing of frivolous lawsuits against judges. We cannot condone such behavior.

¶ 58    As to the dismissal order, the court properly granted the defendants' section 2-615 motions. "[A] ruling on a section 2-615 motion to dismiss presents a question of law and our review is *de novo*." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418-19 (2002). A plaintiff must allege sufficient facts in support of each element of a cause of action to avoid dismissal. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 336 (2006).

¶ 59    The circuit court found that Gillard failed to plead sufficient facts to support the essential elements of her claims. In particular, the court noted that her defamation claims did not allege any false statement; her intentional infliction of emotional distress claim did not allege any extreme or outrageous conduct, intent to cause emotional distress, or actual injury; her negligent

infliction of emotional distress did not allege any contemporaneous physical injury; and her false light claim did not plead any statement that was not substantially true. A review of the fourth amended complaint clearly supports the court's conclusions. Given the fact that Gillard had ample opportunity to amend her complaint, the circuit court clearly did not err in dismissing the fourth amended complaint with prejudice.

¶ 60    We hold, therefore, that all issues raised in Gillard's appellant brief are waived because she did not raise them before the trial court. All of the issues actually addressed before the trial court are forfeited because Gillard did not raise them on appeal. And, even if we were to look beyond these procedural bars, we would affirm the decisions of the circuit court on the merits.

¶ 61                                    B. Sanctions

¶ 62    With the exception of Starbucks, the defendants argue that this appeal is frivolous, that Gillard's serial litigation is egregious, and that this court should enter an order of sanctions against Gillard under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Rule 375(b) allows for "appropriate sanction[s]" against parties who file frivolous appeals. *Id.* "[T]he appeal is considered frivolous if it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990). Although this court is especially solicitous of self-represented parties who do not display punctilious compliance with our rules, we will order sanctions against *pro se* litigants under sufficiently egregious circumstances. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87. The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011).

¶ 63    Premier Security and the defendants that joined its motion contend that Gillard's appeal is frivolous because no reasonable and prudent attorney would have brought it. Not only was the

dismissal of the fourth amended complaint proper, it argues, but Gillard should have known that appealing the dismissal was futile in light of her conviction for criminal battery. Premier Security argues that Gillard's criminal conviction rendered her claims completely untenable because her claims all rest on her allegation that the battery did not happen the way that the defendants claimed.

¶ 64     Premier Security also argues that no reasonable and prudent attorney would have appealed the order denying Gillard's motion to reinstate the case. The only argument Gillard made in that motion was that Judge McWilliams violated Rule 63(C)(1) in dismissing the fourth amendment complaint. Premier Security contends that no reasonable attorney would have made that argument, especially in light of the fact that Gillard was given leave to amend her complaint four separate times, including once by Judge McWilliams.

¶ 65     Next, Premier Security argues that this case is emblematic of Gillard's egregious pattern of frivolous litigation. This case was dismissed for want of prosecution twice when Gillard failed to appear for multiple court dates. The record also includes more than half a dozen motions to substitute judge, several of which were improperly noticed as emergency motions for presentment before the presiding judge of the law division. Further, Gillard's behavior in this case was evidently so disruptive that Judge McWilliams took the extraordinary step of entering a detailed protocol order.

¶ 66     Premier Security points out that Gillard has been sternly admonished by several courts for her frivolous litigation. See *Southern New England School of Law*, 563 U.S. 1030 ("[Gillard] has repeatedly abused this Court's process"); *Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 550 (7th Cir. 2010) (warning "that, if [Gillard] continues to file frivolous appeals, she will be subject to sanctions or restrictions on future litigation"); *Board of Trustees of*

*Community College District No. 508*, 393 F. App'x at 401 ("we remind [Gillard] that litigants who abuse the judicial process face sanctions and restrictions on future suits"); *United States District Court for the District of Massachusetts*, 2016 WL 8716220, at *2 ("[Gillard's] conduct is vexatious and an abuse of the processes of this Court for the administration of justice.").

¶ 67    In fact, this court issued a similar warning to Gillard mere months ago. *Northwestern Memorial Hospital*, 2018 IL App (1st) 180922-U, ¶ 25 ("if [Gillard] pursues a pattern of frivolous appeals before this court, she will face sanctions"). It appears that Gillard has not heeded our admonishment.

¶ 68    We note that her prodigious appellate practice has been characterized by repeated, and often dispositive, failures to obey the Illinois Supreme Court rules regarding briefs. Gillard has yet to file before this court a single appellate brief that consistently and properly cites the record. And although we have occasionally excused her rule violations (see, *e.g.*, *Northwestern Memorial Hospital*, 2018 IL App (1st) 180922-U, ¶ 16 ("Although Gillard's briefs are somewhat muddled and lack consistent citations to the record or legal authority, we have chosen not to strike the brief in this appeal ***.")), we have also dismissed several of her appeals on those grounds (see, *e.g.*, *Gillard II*, 2018 IL App (1st) 173036-U, ¶ 13 (striking Gillard's brief and dismissing the appeal)). Despite our admonishments and dismissals, Gillard persists in inappropriate use of the judicial system. Courts have the inherent power to control their dockets and establish protocols to prevent misuse of judicial resources. See, *e.g.*, *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007) ("the trial court possesses the inherent authority to control its own docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases caused by abuses of the litigation process"). Gillard's conduct would fully justify imposition of a sanction including the imposition of a substantial fine (see *Parkway Bank*, 2013 IL App (1st)

130380, ¶ 103 (imposing $5000 fine)), and a judgment for all of the defendants' attorney fees and costs. However, as Premier Security concedes, it may be unlikely that Gillard can, or would, pay such assessments. Premier has suggested that this court enter an order barring Gillard from filing any appeals without judicial approval to determine if the appeal is filed in good faith. The Illinois Constitution guarantees the right to file an appeal in this court from any final judgment of a circuit court. Ill. Const. 1970, art. VI, § 6. Additionally, we acknowledge our supreme court's continued emphasis on the principles of access to justice in our society. See, *e.g.*, Ill. S. Ct. R. 10-100 (eff. Apr. 8, 2013) (creating the Commission on Access to Justice). Therefore we will impose sanctions that we believe are consistent with those principles and are appropriate under the circumstances.

¶ 69    We grant the defendants' motion in part and refer this opinion to the executive committee of the Appellate Court of Illinois, First District, for the entry of an administrative order governing Gillard's future civil appeals. We recommend that the order contain the following provisions: (1) any civil appeal will be assigned a docket number; (2) upon being docketed, the appeal will be stayed and no opposing party need file responsive documents unless requested by the court or the court lifts the stay; (3) Gillard will file a docketing statement within the time required by the Illinois Supreme Court rules; (4) upon filing the docketing statement, Gillard will file a motion for leave to proceed with the appeal, no more than 10 pages in length: (a) explaining which Illinois Supreme Court rules allow the order or orders appealed to be appealable and, in summary, what basis she will argue for their reversal and (b) including as a supporting record, legible copies of all orders being appealed; (5) the court will consider the memorandum and may request additional information to determine if the appeal is frivolous and/or should be summarily dismissed; (6) any fee waiver motion Gillard files pursuant to

Illinois Supreme Court Rule 313 (eff. July 1, 2018) shall include her actual residence address (not a post office box address) and copies of her last two annual state and federal income tax returns and an affidavit as to their authenticity (the social security number may be redacted)[4]; and (7) all civil cases filed by Gillard shall be assigned as related to this case under Illinois Appellate Court First District Rule 2(I)(D)(1) (Ill. App. Ct., First Dist., R. 2(I)(D)(1) (Sept. 1, 2004)).

¶ 70    Keeping in mind that the law recognizes the principles of progressive discipline, nothing in this opinion should be construed as limiting the power of this court or a circuit court from imposing additional or different sanctions against Gillard in future cases.

¶ 71    We implore Gillard to use the resources available to self-represented litigants to obtain advice regarding how she should proceed to resolve disputes in the future.

¶ 72                                III. CONCLUSION

¶ 73    We affirm the dismissal of Gillard's fourth amended complaint and the circuit court's denial of Gillard's motion to reinstate the case. We also enter sanctions as set forth herein.

¶ 74    Affirmed.

---

[4] See our contemporaneous order, *McWilliams*, 2019 IL App (1st) 182217-U, ¶ 6, for background on why we recommend this procedure. See also *Southern New England School of Law*, 563 U.S. 1030 (prohibiting Gillard from proceeding with civil appeals without paying the required fees). We recommend that the circuit court use its authority under Illinois Supreme Court Rule 298 (eff. Jan. 1, 2018) to hold hearings on any future fee waiver petitions filed by Gillard, and to stay any litigation brought by her until she pays the appropriate fees, or it is satisfied that she actually qualifies for a fee waiver.