2026 IL App (1st) 251211-U

No. 1-25-1211

Order filed June 11, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| L. JACQUELINE GILLARD, | ) | Petition for Review |
| | ) | of an Order of the Illinois |
| Petitioner, | ) | Human Rights Commission. |
| | ) | |
| v. | ) | No. 24 CP 1460 |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, | ) | |
| THE DEPARTMENT OF HUMAN RIGHTS, and DES | ) | |
| PLAINES PUBLIC LIBRARY, | ) | |
| | ) | |
| Respondents. | ) | |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the decision of the Human Rights Commission sustaining the dismissal of petitioner's charge of disability and racial discrimination.

¶ 2    Petitioner L. Jacqueline Gillard (also known as Lisa J. Gillard) filed a charge of discrimination with the Department of Human Rights (Department) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2022)). The charge alleged that respondent the

Des Plaines Public Library (Library), a place of public accommodation under the Act, denied her full and equal enjoyment of the Library based on her disability (dyslexia) and race (Black). The Department dismissed the charge for lack of substantial evidence. Gillard requested review with the Human Rights Commission (Commission), which sustained the Department's finding. Gillard filed *pro se* a petition for review in this court. We affirm.

¶ 3     On April 4, 2024, Gillard perfected a charge of discrimination against the Library with the Department. Gillard alleged that on April 26, 2023, the Library denied her seating within the "Forum" area on the bases of her disability (dyslexia) and race (Black). Gillard alleged that the Library treated similarly situated non-Black and non-dyslexic patrons differently under similar circumstances.

¶ 4     The Department investigated Gillard's charge and completed an investigation report. The investigator found as uncontested that on April 26, 2023, Gillard sought use or enjoyment of the Library. The Library barred her from its facility for three months "citing behavior towards patrons of the library and library staff." The Department also found that the Library is publicly funded and "was aware of Gillard's race, black." The investigator interviewed Gillard and Jo Bonell, the Library director.

¶ 5     Gillard stated that around March 2023, she started frequenting the Library and told Joannie Sebastian, the Library's director of adult services, about her dyslexia. On April 26, 2023, Gillard claimed that Laurie Papodourakis, assistant library director, denied Gillard use of the "Forum" seating area "for no good reason," so "the reason must have been her disability, dyslexia." Gillard "was unable to explain how Papodourakis would have been aware of her condition." Gillard

maintained that the Library treated similarly situated non-disabled and non-Black customers more favorably under similar circumstances but identified no circumstances indicative of this.

¶ 6    Gillard did not provide the Department with any medical documentation of her dyslexia, although the Department provided her its standard verification of disability form.

¶ 7    Bonell stated that neither she nor the Library staff knew that Gillard was dyslexic, explaining that the condition was not obvious and Gillard had not disclosed it.

¶ 8    The Library provided the investigator with its "Rules of Conduct" stating, in relevant part, that:

> "All behavior constituted or determined disruptive or hinders the use of the library for another person is prohibited. This includes, but not limited to indecent behavior, offensive or unbecoming conduct or language, blocking the stairways or entrance or exit, and verbal or physical harassment. Failure to comply with the library's Rule of Conduct, or any activity which potentially jeopardizes the safety of an individual or failure to comply with a reasonable staff request to cease and desist a behavior, may result in revoked privileges, removal from premises and exclusion from the library or arrest and prosecution depending upon the nature of the misconduct."

¶ 9    According to Bonell, Gillard showed a "pattern of disruptive behavior" and would repeatedly "yell at and intimidate other library patrons." Later, according to Bonell, Gillard verbally abused [Library] staff." The Library documented "at least 13 incidents" involving Gillard, including 9 from March 2023 and 4 from April 2023. The Library submitted an exhibit describing each incident in detail.

¶ 10    On April 26, 2023, Library employees approached Gillard in the "Forum" and provided her with a letter informing her that the Library was barring her for three months for "multiple violations of [the Library]'s Rules of conduct, specifically for being verbally abusive to staff and other patrons." The Library then prepared an incident report. Bonnell also provided to the Department a list of incident reports from March 2022 to April 2024 in which the Library temporarily barred other patrons from the premises, explaining "the barred individuals included people who were not known to be disabled, as well as non-black individuals."

¶ 11    In rebuttal, Gillard stated that she began having problems at the Library when she voiced her concern about threats by other patrons and staff at the Library.

¶ 12    The investigator recommended a finding of lack of substantial evidence that the Library denied Gillard the full and equal enjoyment of its facility due to her disability (dyslexia) and race (Black). The investigator noted that Gillard failed to provide to the Department any documentation verifying her condition. The investigator found that the Library barred Gillard "only after she continued to fail to comply with the Library's Rules of Conduct or failed to comply with a reasonable staff member's request to cease and desist the behavior," not due to her disability or race. The investigator also noted that Gillard failed to identify any "similarly situated patron who was treated more favorably under similar circumstances." Rather, the Library had "barred numerous individuals due to misconduct and none were known to have been disabled," and similarly barred multiple non-Black patrons for misconduct. Therefore, according to the investigator, Gillard had not shown that the Library believed her to be disabled and "harbored an anti-disability" and racial animus.

¶ 13    On November 7, 2024, the Department dismissed Gillard's charge for lack of substantial evidence.

¶ 14    On December 27, 2024, Gillard filed a request for review of the Department's decision with the Commission. Gillard argued that the Library's stated reasons for temporarily barring her from the premises "were a pretext for intentional discrimination." In an affidavit, Gillard averred that she had orally complained about mistreatment by all-White patrons and Library staff to the Des Plaines Mayor's Office and the Des Plaines Police Department, which could attest to Gillard's complaints. Gillard also attached a police report describing an incident on April 13, 2023, during which she complained that an employee at the library made her feel uncomfortable.

¶ 15    The Department filed a response to Gillard's request for review, maintaining that Gillard had failed to establish *prima facie* cases of discrimination based on race and disability.

¶ 16    On May 13, 2025, the Commission issued a final order sustaining the Department's dismissal for lack of substantial evidence. The Commission noted that Gillard was not "disabled" for purposes of the Act, because "there was no evidence that [her] *** dyslexia was not transitory, was significantly debilitating or disfiguring, and was unrelated to her ability to utilize and benefit from a place of public accommodation." Also, Gillard did not provide medical documentation as to "her condition or fill out a Verification of Disability form." Further, even if Gillard were disabled, "there was insufficient evidence that [the Library] knew about her 'disability' or denied her access to the library because of it."

¶ 17    The Commission also determined that Gillard's race-based claim failed because "there was no evidence that there were similarly situated, non-Black patrons who were not denied access to the library after numerous incidents of disruptive behavior."

¶ 18    On June 17, 2025, Gillard timely filed a *pro se* petition for administrative review in this court. See 775 ILCS 5/8-111(B)(1) (West 2022); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 19    On appeal, Gillard challenges the Commission's decision to sustain the dismissal of her charge of discrimination.

¶ 20    As an initial matter, Gillard's *pro se* brief fails to meet the requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which mandates procedural rules governing the content and format of appellate briefs. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. For example, Gillard's Statement of Facts improperly characterizes the Library's conduct and the Commission's decision as discriminatory, and her Argument never cites to the record on appeal. We have previously admonished Gillard for a similar failure to comply with Rule 341. See *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶¶ 46, 47. It "would be well within our discretion to strike Gillard's briefs and dismiss the appeal." *Id.* However, we decline to do so here, where it is apparent that Gillard challenges the Commission's order. *Bunjo v. State Farm Fire & Casualty Co.*, 2025 IL App (1st) 241010, ¶ 21.

¶ 21    Gillard appears to argue that the Library violated the Act, the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (2024)), and the equal protection clauses of both the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2) and the United States Constitution (U.S. Const., amend. XIV). However, Gillard's request for review before the Commission neither raised constitutional issues nor mentioned the Americans with Disabilities Act. Because Gillard raises those issues for the first time in this appeal, we cannot review them. See *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 42 (this court may not review arguments that were not raised in the underlying administrative proceedings). We therefore limit our review to the claim

Gillard raised before the Commission, namely, that the Library violated the Act by discriminating against her on the basis of race or disability.

¶ 22    Gillard filed her charge of discrimination asserting that the Library denied her full and equal enjoyment of its facility. Section 5-102(A) of the Act (775 ILCS 5/5-102(A) (West 2022)) provides that it is "a civil rights violation for any person, on the basis of unlawful discrimination, to deny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." A library is a public place of accommodation under the Act. *Id.* § 5-101(A)(9). Unlawful discrimination includes discrimination based on a person's disability or race. *Id.* § 1-103(Q).

¶ 23    The Act requires the Department to conduct a full investigation of any timely-filed charge of a civil rights violation. *Budzileni v. Department of Human Rights*, 392 Ill. App. 3d 422, 441 (2009). Where the Department's investigation determines that no "substantial evidence" supports the charge, the Department must dismiss the charge. *Id.* at 441-42. Substantial evidence is evidence "which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." (Internal quotation marks omitted.) *Id.* A charge that contains "mere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). If the Department dismisses a charge of discrimination, the complainant may file a request for review with the Commission. 775 ILCS 5/7B-102(D)(2)(a) (West 2022)). If the Commission sustains the Department's dismissal, the complainant may seek review directly with this court. *Id.* § 8-111(B)(1). We review the Commission's decision, not the Department's decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989).

¶ 24    Although Gillard contends that our review is *de novo*, it is well-established that we review the Commission's decision for an abuse of discretion. *Spencer*, 2021 IL App (1st) 170026, ¶ 32. This court "will not disturb the Commission's decision unless it is arbitrary or capricious, meaning that it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." (Internal quotation marks omitted.) *Id.*

¶ 25    Discrimination may be proven through direct or indirect evidence. *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536 (2000). Direct evidence proves discrimination "without reliance on inference or presumption." *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006). Indirect evidence is "circumstantial evidence that allows a [fact finder] to infer intentional discrimination by the decision maker." *Id.* Gillard did not present any evidence of direct discrimination. Therefore, she was required to establish unlawful discrimination through indirect evidence. Under that approach, Gillard had the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Spencer*, 2021 IL App (1st) 170026, ¶ 32.

¶ 26    The *prima facie* elements of public accommodation discrimination require that a complainant show that she (1) is a member of a protected class, (2) attempted to exercise the rights to full benefits and enjoyment of a place of public accommodation, (3) was denied those benefits and enjoyment, and (4) was treated less favorably than similarly situated persons outside her protected class. *Cruz v. Illinois Human Rights Comm'n*, 2026 IL App (1st) 240973-U, ¶ 26; see Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025) (non-precedential orders entered under Illinois Supreme Court Rule 23(b) on or after January 1, 2021, may be cited as persuasive authority).

¶ 27    Regarding Gillard's disability-based discrimination claim, the Commission noted that Gillard provided no documentation of her alleged medical condition. Absent such evidence, Gillard did not show that she was a member of a protected class and therefore failed to establish a *prima facie* case of disability-based discrimination. See *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 34 (the burden of establishing a *prima facie* case of discrimination rests upon the complainant).

¶ 28    Regarding Gillard's race-based discrimination, the Library temporarily barred Gillard from its premises for violating the Library's Rules of Conduct. The Library identified other circumstances where it prepared an incident report documenting it temporarily barred non-Black and patrons of unknown disability status from using its premises for violating its Rules of Conduct. Gillard asserted that other patrons were treated more favorably under similar circumstances. However, Gillard provided no evidence that the Library treated her less favorably than similarly situated persons outside her protected class. See *Folbert*, 303 Ill. App. 3d at 25 (mere speculation and conjecture are insufficient to constitute substantial evidence). Because Gillard did not establish that she was "treated less favorably than similarly situated persons" outside her protected class, she failed to establish a *prima facie* case of unlawful discrimination based on race or disability. We therefore find that the Commission's order sustaining the Department's dismissal of Gillard's discrimination charge for lack of substantial evidence was not an abuse of discretion.

¶ 29    For these reasons, we affirm the final order of the Commission.

¶ 30    Affirmed.